**STATE**

v.

**Darrell E. PONA.**

No. 2009–305–C.A.

Supreme Court of Rhode Island.

March 3, 2011.

Virginia M. McGinn, Department of Attorney General, for State.

Jodi M. Gladstone, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The defendant, Darrell E. Pona (defendant or Pona), appeals from an adjudication of probation violation in Superior Court. Pona argues on appeal that the

hearing justice acted arbitrarily and capriciously when he found that the defendant violated his probation. The defendant also argues that he is entitled to a new violation hearing based on newly discovered evidence including photographs and evidence that is "material to the credibility of the sole eyewitness" to the defendant's conduct. He contends that, as a result, he was denied due process and requests this Court to vacate the hearing justice's finding and remand this matter to the Superior Court. This case came before us for oral argument on January 31, 2011, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After an examination of the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On June 27, 2003, Pona entered a plea of nolo contendere in Superior Court on charges of felony assault under G.L.1956 § 11–5–2 (count 1) for which he was sentenced to six years, with six months to serve at the Adult Correctional Institutions (ACI), and five-and-a-half years suspended, with probation; of simple assault under § 11–5–3 (count 2), for which he received a one-year suspended sentence, with one-year probation; and of receipt of stolen goods under G.L.1956 § 11–41–2 (count 3) for which he also received a one-year suspended sentence. Subsequently, on April 26, 2006, he again pled nolo contendere to a charge of unlawful breaking and entering of a dwelling in violation of G.L.1956 § 11–8–2 (count 1) for which he was sentenced to ten years, with three

years to serve at the ACI, and seven years suspended, with probation. After defendant was arrested for attempted unlawful breaking and entering of a dwelling on June 15, 2008, the state filed a probation-violation notice under Rule 32(f) of the Superior Court Rules of Criminal Procedure. A violation hearing was held before a justice of the Providence County Superior Court on November 18, 2008.

At the hearing, the state presented three witnesses. First, the state called the eyewitness to defendant's alleged violative conduct, Genaro Ramirez (Ramirez). Ramirez testified that he had been a trooper for the Rhode Island State Police for sixteen years. According to Ramirez, he was off duty at his home in Providence on June 15, 2008. While in his backyard doing yard work and practicing golf swings, he observed a man, whom Ramirez later identified as defendant, emerge from a parking lot adjacent to Ramirez's house and cross the street. He testified that he and defendant made eye contact, and he described him as a "[b]lack gentleman about 5'4" with a black jacket." According to Ramirez, defendant "proceeded to go across the street to 54 [Whitmarsh Street] and went up to the porch" of the house at that address. Ramirez testified that he could see this porch at 54 Whitmarsh Street from his backyard. The house located at 54 Whitmarsh Street is diagonally across the street from Ramirez's home. He noticed defendant "tapping the door * * * and looking in through the screen." According to Ramirez, he "then saw [defendant] fumbling with the door." He said that as he crossed the street to "see what was going on," he "heard a ripping sound."

After Ramirez arrived at the sidewalk in front of 54 Whitmarsh Street, he questioned defendant about what he was doing. According to Ramirez, defendant approached him "close" and told him "to

mind [his] own business." Ramirez testified that he informed defendant that he was "a member of the State Police" and "hit him with [his] golf club by the leg." He said that defendant then "took off running." Ramirez testified that he was unable to pursue defendant on foot because of a leg injury, so he alerted the resident of 54 Whitmarsh Street to call the police and gave her a description of defendant. He then drove his car to Broad Street, where he discovered the police officers with the apprehended defendant. According to Ramirez, he told the police officers that the person they apprehended "was the same gentleman that [he] had the confrontation with."

The state next presented Laurie Meier (Meier), the resident of 54 Whitmarsh Street. She testified that on June 15, 2008, after she "heard [her] neighbor calling [her]," she "ran downstairs and [she] saw the screen slashed." According to Meier, her front door was open, but the screen door, which was "brand new," was closed and latched. She testified that she did not give anyone other than her children permission to be in her home that day. At the instruction of her neighbor, Ramirez, she called the police and provided the description of defendant provided to her by him.

The state then presented its final witness, Officer Keith LaFazia (Officer LaFazia) of the Providence Police Department. A twelve-year veteran of the department, Officer LaFazia was on duty as a day patrolman on June 15, 2008, when he was dispatched to 54 Whitmarsh Street to respond to a call of a "break in progress." Officer LaFazia testified that the suspect was described as "a black male" with "a baseball hat on that said 76ers on it." According to Officer LaFazia, as he was responding to the call, he drove down Broad Street, where he "observed a subject [who] looked like he was in a hurry." Officer LaFazia testified that the subject matched the provided description.[1] He then "exited [his] police vehicle and detained [defendant]." At the hearing, Officer LaFazia identified defendant as the subject.

Both the state and the defense rested without presenting any additional witnesses. After hearing the parties' closing arguments, the hearing justice made findings of fact. He found that defendant "walked up to the front door [of the residence at 54 Whitmarsh Street], [and] attempted to get in, first by tearing the screen door." He found that Ramirez observed defendant do so and "was able to see him well, and well enough to strike him with a golf club and also make eye contact with him." The hearing justice found that Ramirez alerted Meier to the attempted breaking and entering and told her to call the police, which she did. He found that, as a result, Providence police officers apprehended defendant on Broad Street.

The hearing justice found Ramirez to be a "strong witness with very high credibility" because he was "very clear and very convincing" and "consistent throughout" his testimony. He stated that it was "important to note * * * [Ramirez's] statement that he had a clear view of the [54] Whitmarsh Street home from his back-

---

1. It was elicited from Officer LaFazia on cross-examination that his witness statement recorded subsequent to defendant's arrest did not include several details that he provided in his testimony. Specifically, Officer LaFazia admitted that he did not describe defendant in the witness statement as "hurriedly walking" when he observed him on Broad Street, and he claimed that he made a clerical error when he omitted from his statement that defendant was wearing a "76ers hat."

yard."[2] The hearing justice also found Meier "to be highly credible." However, he found Officer LaFazia to be "less credible" because "he had limited recollection of the events of the actual day, having to rely on several occasions on his report." Nevertheless, the hearing justice was satisfied that Officer LaFazia's testimony was not so at odds with the report as to "cause the [c]ourt to question the report or whether [defendant] failed to keep the peace and be of good behavior."

Consequently, the hearing justice was "reasonably satisfied" that defendant "failed to keep the peace and be of good behavior on June 15, 2008." Therefore, he found that defendant violated the terms of his previously imposed probations. The hearing justice then sentenced defendant to serve six years of the seven-year suspended sentence that defendant received for his breaking-and-entering conviction in 2005, with one year suspended. The hearing justice also continued defendant's previously imposed probation. On November 20, 2008, defendant filed two notices of appeal from the adjudication of the probation violation of his previously imposed sentences, and judgment was entered on December 2, 2008.[3]

## II

## Issues on Appeal

The defendant advances two issues on appeal. First, defendant argues that the hearing justice acted arbitrarily and capriciously when he found that defendant violated the terms and conditions of his probation because he contends that two of the state's three witnesses were not credible and that the evidence does not support a finding to a reasonable satisfaction that defendant failed to keep the peace and be of good behavior. Second, in his supplemental memorandum submitted to this Court, defendant additionally argues that he was denied due process of law when he did not have the opportunity to cross-examine Ramirez about Ramirez's capacity for truth and veracity because the state did not provide him prior to the violation hearing with evidence that defendant maintains is material to Ramirez's credibility. The defendant also suggests that the newly discovered evidence that, in his view, requires a new violation hearing includes two photographs of the screen door that are of superior quality to those produced at the violation hearing.

## III

## Standard of Review

"The sole issue for consideration at a probation-violation hearing is 'whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior.'" *State v. Gilbert*, 984 A.2d 26, 29 (R.I.2009) (quoting *State v. Tetreault*, 973 A.2d 489, 491 (R.I.2009)). "It is well settled that the burden of proof in a probation-revocation hearing is considerably lower than in a criminal case." *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005) (citing *State v. Pagan*, 793 A.2d 1046, 1046–47 (R.I.2002) (mem.); *State v. Rioux*, 708

**2.** This statement is inconsistent with the hearing justice's immediately preceding statement that Ramirez had testified that "he had a clear view of the backyard." In light of Ramirez's testimony and the hearing justice's subsequent statement, however, it is clear that the hearing justice misspoke when he stated that Ramirez could view the backyard of the residence of 54 Whitmarsh Street from his own backyard.

**3.** Although defendant filed his notices of appeal before judgment entered in this case, this Court will treat the premature appeal as timely filed. *State v. Sylvia*, 871 A.2d 954, 957, 957 n. 2 (R.I.2005).

A.2d 895, 897 (R.I.1998)). "[T]he state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *State v. Bouffard,* 945 A.2d 305, 310 (R.I.2008) (citing *State v. Forbes,* 925 A.2d 929, 934 (R.I.2007); *Sylvia,* 871 A.2d at 957). "Consequently, the 'reasonably satisfied standard * * * should be applied to whether defendant maintained the conditions of his probation' and not to the issue of the defendant's guilt with respect to the new charges." *Sylvia,* 871 A.2d at 957 (quoting *State v. Waite,* 813 A.2d 982, 985 (R.I.2003)).

■ "In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." *Tetreault,* 973 A.2d at 492 (quoting *State v. Christodal,* 946 A.2d 811, 816 (R.I.2008)). Accordingly, "[a]ssessing the credibility of a witness in a probation violation hearing is a function of the hearing justice, not this Court." *Id.* (quoting *Waite,* 813 A.2d at 985). We "will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing." *State v. Jones,* 969 A.2d 676, 679 (R.I.2009) (quoting *State v. Jackson,* 966 A.2d 1225, 1229 (R.I.2009)). Therefore, "[o]n appeal from a finding of a probation violation, this Court's review is limited to 'whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation.'" *Tetreault,* 973 A.2d at 492 (quoting *Christodal,* 946 A.2d at 816).

## IV

## Discussion

### A

### Finding of Probation Violation

■ The defendant argues that the hearing justice acted arbitrarily and capriciously when he found that defendant violated his probation because two of the state's three witnesses were not credible and the finding was against the weight of the evidence. We disagree. After review of the record that was before the hearing justice, we are satisfied that the hearing justice did not rule improperly when he found that defendant violated the terms and conditions of his probation.

In determining whether defendant violated his probation, the hearing justice fulfilled his obligation to assess the credibility of the witnesses and weigh the evidence. *Tetreault,* 973 A.2d at 492 (citing *Christodal,* 946 A.2d at 816). He found two of the three witnesses to be highly credible, but the third, Officer LaFazia, less so. However, the hearing justice concluded that Officer LaFazia's reliance on his report and failure of memory in some instances did not call the report itself into question. Therefore, based on the report and the witnesses' testimony, the hearing justice was reasonably satisfied that defendant had violated his probation. *See Sylvia,* 871 A.2d at 957 ("[T]he state is only required to prove to the reasonable satisfaction of the hearing justice that the defendant has violated the terms and conditions of the previously imposed probation.") (quoting *State v. Anderson,* 705 A.2d 996, 997 (R.I.1997) (mem.)).

■ We perceive no error in the hearing justice's performance of his function when he adjudicated defendant a probation-violator, which included assessing the credibility of the witnesses. If the hearing justice "accepts one version of events for plausible reasons stated and rationally rejects another version, we can safely conclude that the hearing justice did not act unreasonably or arbitrarily in finding that a probation violation has occurred."

*Jones,* 969 A.2d at 680 (quoting *Waite,* 813 A.2d at 985). Here, the hearing justice accepted Ramirez and Officer LaFazia's version of events for plausible reasons. He noted that Ramirez consistently stated in his testimony that he clearly could see 54 Whitmarsh Street from his backyard. He also concluded that the inconsistencies between Officer LaFazia's testimony and his report were not significant enough to compromise the evidentiary force of the report. These determinations are supported by the record. Conversely, when defendant's attorney argued in summation that Ramirez was motivated by a grudge he held against defendant and that Ramirez himself damaged the door with the golf club he was wielding, the hearing justice recognized that these contentions were not supported by the record. We will not "second-guess" the hearing justice's "supportable credibility determinations." *Jones,* 969 A.2d at 680 (quoting *State v. Jackson,* 966 A.2d at 1229); *see State v. Johnson,* 899 A.2d 478, 482 (R.I.2006) ("[I]t is not the role of this Court to second-guess credibility assessments in such matters.").

The defendant also argues that the evidence presented did not prove that defendant violated his probation because "[t]he hearing justice did not find that the defendant damaged the screen door" nor that "a break occurred." He contends, therefore, that a finding that defendant violated his probation necessarily was arbitrary and capricious. Contrary to defendant's assertions, however, the hearing justice, in fact, did find that defendant "walked up to the front door [of 54 Whitmarsh Street], [and] attempted to get in, first by tearing the screen door."

■ The hearing justice also stated that he was "not making any finding, nor does the [c]ourt need to find that a break occurred * * *, as this is not the trial.

It's only a finding of a violation hearing and the [c]ourt does find that defendant violated the terms of the sentence[s]." This statement reflects that "the sole purpose of a probation-revocation proceeding is for the trial justice to determine whether [the conditions of probation] have been violated." *Sylvia,* 871 A.2d at 957 (citing *Waite,* 813 A.2d at 985; *State v. Pena,* 791 A.2d 484, 485 (R.I.2002) (mem.)). As such, "the state does not have to prove beyond a reasonable doubt that an alleged probation violator committed a crime; the state need only reasonably satisfy the hearing justice that a defendant breached a condition of probation by failing to keep the peace or remain on good behavior." *Jones,* 969 A.2d at 680 (quoting *Christodal,* 946 A.2d at 816). Therefore, the hearing justice correctly did not consider whether defendant was guilty of the crime of attempted breaking and entering. *See Sylvia,* 871 A.2d at 957.

After assessing the credibility of the witnesses and weighing the evidence, the hearing justice not only was reasonably satisfied that defendant failed to keep the peace and be of good behavior, but also went so far as to find that "it [was] clearly established that [defendant] failed to be of good behavior" on June 15, 2008. After careful review, we conclude that reasonably satisfactory evidence existed to support the hearing justice's finding that defendant violated the terms and conditions of his probation. Therefore, it is our opinion that the hearing justice acted neither arbitrarily nor capriciously when he adjudicated defendant a probation-violator based on the record before him.

**B**

**Request for a New Hearing**

■ In a supplemental memorandum to this Court, defendant argues that be-

cause of newly discovered evidence, he was denied due process of law and is entitled to a new probation-violation hearing. According to defendant, in late October 2010, his trial counsel received from the state a copy of a letter of suspension dated January 20, 2006, addressed to State Trooper Genaro Ramirez and written by Colonel Stephen M. Pare, then Superintendent of the Rhode Island State Police.[4] The letter recounted instances when Trooper Ramirez neglected his duties and was dishonest, and it informed Trooper Ramirez that the resulting disciplinary penalty was two-days suspension, without pay.

The defendant contends that the state's failure to provide him with this evidence before the probation-violation hearing denied defendant due process because he could not cross-examine Ramirez about his capacity for truth and veracity, which defendant maintains was called into question by the evidence of the disciplinary action against Ramirez. The defendant relies on *State v. Roberts*, 841 A.2d 175, 178 (R.I. 2003) and *State v. Marrapese*, 122 R.I. 494, 504–05, 409 A.2d 544, 550–51 (1979), to support his argument that the state constitutionally was obligated to produce the information relevant to Ramirez's credibility as part of the minimum due-process requirements afforded to defendants at probation-violation hearings. *See State v. Pompey*, 934 A.2d 210, 214 (R.I.2007) (explaining that "[t]he defendant in a violation hearing is entitled to the minimum due process protections of 'notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence [on] defendant's behalf, and the right to confront and cross-examine the witnesses against defendant'") (quoting

*State v. Bernard*, 925 A.2d 936, 938–39 (R.I.2007)); *State v. Campbell*, 833 A.2d 1228, 1231, 1233 (R.I.2003) (noting that, although the defendant in a violation hearing is afforded minimum due-process protections, he or she "is not entitled to 'the full panoply of rights' inherent in a criminal trial," such as the exclusion from evidence of illegally obtained statements). The defendant also contends that photographs of the slashed screen door recently provided to him by the state "support [his] theory that it was [Ramirez] who sliced the screen." He maintains that, because this "newly discovered evidence" is "material and credible," a new violation hearing is necessary.

However, as the state correctly points out, these issues have not yet been presented in Superior Court, and, consequently, there is nothing for this Court to review. Therefore, because this Court will not review issues raised for the first time on appeal, we decline to address the defendant's argument that his due-process rights were violated and that he is entitled to a new violation hearing on the basis of newly discovered evidence. *See State v. Kilburn*, 809 A.2d 476, 479 (R.I.2002) (citing *State v. Breen*, 767 A.2d 50, 57 (R.I. 2001) ("This issue was not raised in the Superior Court, and therefore, in accordance with our well-established rule, cannot be raised for the first time before this Court on appeal.")).

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior

---

4. According to defendant, the state provided him with this evidence "in anticipation of trial" on the attempted breaking-and-entering offense, which was the basis of the violation hearing. *See Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (holding that material evidence relevant to the credibility of the witness upon whom the prosecution's case depended must be disclosed to the jury).

Court, to which we remand the record in
this case.