**Supreme Court**

No. 2012-120-C.A.

(P1/93-2785A)

State                                :

v.                                :

Thomas G. Lamoureux.                :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                         :

v.                           :

Thomas G. Lamoureux.       :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Thomas G. Lamoureux (Lamoureux or defendant) appeals from a Superior Court judgment of conviction declaring him to be in violation of his probation and executing seven years of his previously imposed suspended sentence.  On appeal, he challenges the sufficiency of the evidence in support of this judgment.  This case came before the Supreme Court for oral argument on December 6, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

Lamoureux pled guilty to manslaughter on September 26, 1994.  He received a sentence of thirty years in prison, with ten years to serve and twenty years suspended, along with twenty

years probation. Since then, he has twice been adjudged a probation violator.[1] Lamoureux's third and most recent probation violation is the subject of this appeal. The events underlying the adjudication now before us for review took place on October 7 and 8, 2011. Those events were described in detail at a hearing held before a justice of the Superior Court on December 7, 2011. We now summarize that proceeding, omitting testimony not relevant to our disposition of this appeal.

Two siblings testified for the prosecution: Joanne Michaud and David Michaud.[2] Joanne testified that as of October 2011, she had known Lamoureux for a long time and had been dating him for four years. On October 7, 2011, Lamoureux arrived uninvited at her apartment in Woonsocket at around 4 p.m. She recalled that after he arrived, Lamoureux asked her for some money. When she declined that request, he reached over her and used a pair of scissors to cut the strap of her purse, which she had been wearing on her shoulder. Joanne explained that when Lamoureux leaned toward her to cut the strap of her purse, she thought he was about to embrace her. He then slapped her across the face, went through her purse, and took the money inside—about $480. She testified that she had a red mark on her face after this incident. When she told him that she was going to call the police, he "took off." Soon after, Joanne gave a statement to police in which she recounted the details of this encounter.

Despite this incident, the following day, on October 8, 2011, Joanne accompanied Lamoureux and his mother to the annual Autumnfest in Woonsocket. Apparently, Joanne did not discuss the previous day's events with Lamoureux; she stated that "[h]e never remembers."

---

[1] In March 2004, Lamoureux was ordered to serve 120 days in prison, with 236 months remaining suspended. In January 2011, he was ordered to serve six months in prison, with 230 months remaining suspended. The latter violation stemmed from an incident involving Joanne Michaud, one of the complaining witnesses in this case.

[2] We refer to Joanne and David by their first names for the sake of clarity and intend no disrespect.

She explained that she normally used a wheelchair to get around because of various medical issues and did not want to go to the Autumnfest alone for this reason. Once at the Autumnfest, Joanne gave Lamoureux some money; he then became separated from her and his mother. At some point, she left the Autumnfest to visit her brother, David, for a barbecue at his house. When she arrived, Lamoureux was there.

Joanne testified that her brother and the other guests at the barbecue wanted Lamoureux to leave because he was intoxicated.[3] When she and David asked him to leave, he grabbed a case of beer from her and tore it open. Lamoureux "punched [her] in the stomach and grabbed [her] purse and then * * * picked [her] up by the throat and threw [her] on the ground." He then picked up a steak off the grill and flung it at David. Next, Lamoureux flipped over the grill and "charged after" David. Lamoureux, she said, tore David's shirt off and, at some point after David attempted to defend himself, pulled a knife on him. Joanne averred that she recognized the knife as hers; it had been in the purse Lamoureux had stolen from her the previous day. Lamoureux then cut David's arm and stabbed him in the stomach twice. At some point, David "grabbed [Joanne's] wheelchair to push [Lamoureux] away from him and pin him down * * *." After police were called, Lamoureux "took off." Joanne claimed that although she told police that Lamoureux had thrown the knife into a neighbor's yard, the police "wouldn't go in the next yard to get the knife."

On cross-examination, Joanne admitted that when police came to take her statement after the incident on October 7, 2011, she had not explained exactly how Lamoureux had stolen money from her. She said that she did not tell the police that he had cut her purse strap with

---

[3] Although there was some inconsistency as to whether anyone besides Joanne, David, David's girlfriend, and Lamoureux were at the barbecue, this is irrelevant to our disposition of this appeal.

scissors because "[t]hey didn't ask me." In addition, she testified that, while she had told police that Lamoureux had broken a chair in her apartment that day, she did not actually see him do so. Concerning the altercation at the barbecue on October 8, 2011, Joanne explained that the police refused to take a statement from her that day. She also claimed that the police told her to leave her wheelchair "for evidence because it was covered in blood * * *." Lastly, she explained that although she had called the police several times before October 2011 to report break-ins at her apartment and had identified Lamoureux as the perpetrator in one of these reports, no charges were filed against him as a result of these reports.

David was the next witness to testify at the hearing. His testimony largely corroborated that of his sister's. He explained that when Lamoureux arrived uninvited at his house on October 8, 2011, the two men went to the backyard and had a beer. Lamoureux asked David and his girlfriend for more beer, but neither of them obliged. David then described the ensuing altercation, recounting that incident more or less as Joanne had described it.

A photograph of a stab wound David sustained during the altercation was introduced into evidence over Lamoureux's objection. On cross-examination, David admitted that in his statement to police, he told them that he had not seen Lamoureux with a knife. In response to a question from the hearing justice, David confirmed that he had not seen Lamoureux pull a knife on him during the fight.

Finally, defense counsel called Officer Jason Berthelett of the Woonsocket Police Department. Officer Berthelett testified that he was on duty on October 8, 2011, the day of the altercation at the barbecue. Apparently, after leaving David's house, Lamoureux encountered other police officers nearby. The officers noticed that Lamoureux had some injuries and requested that an ambulance be dispatched to their location. Officer Berthelett first saw

Lamoureux in the back of that ambulance, where he was being attended to by paramedics. He explained that he came into contact with Lamoureux because "he * * * matched a description of a person who had fled the scene of a potential other crime * * *." He noticed that Lamoureux had "a couple of cuts" on his body. After speaking with Lamoureux, Officer Berthelett went to David's house. There, he observed a laceration on David's arm. He stated that a knife was not recovered from the scene of the altercation. Officer Berthelett testified that, although he did not personally search for the knife, he requested other officers to do so. It was unclear, however, whether other officers actually searched the neighboring yard for the knife.

After hearing arguments from counsel, the hearing justice articulated the standard of proof applicable to the proceeding: "[T]he [c]ourt must be reasonably satisfied that the actions of the defendant are sufficient * * * to find that he has not kept his promise to keep the peace and be of good behavior * * *." He characterized the events recounted by the Michaud siblings as a "bizarre story of interpersonal relations." The hearing justice described Joanne's conduct—specifically, accompanying Lamoureux to the Autumnfest the day after she claimed he assaulted her—as "[b]izarre but not unbelievable." After reviewing the evidence presented at the hearing, he concluded that Lamoureux "[had] put himself into unseemly and probably criminal activities within [twenty-four] hours of each other." He found that Lamoureux had violated his probation "by the actions occasioned to [Joanne] on October 7th and October 8th and in the melee that I believe he precipitated in [David's backyard]."

The hearing justice sentenced Lamoureux to serve seven years of his previously suspended sentence, with the balance of that sentence remaining suspended. Judgment against

Lamoureux entered on January 20, 2012, followed by a corrected judgment making his sentence retroactive to October 8, 2011, the date of his arrest.[4] Lamoureux timely appealed to this Court.

## II

## Issue on Appeal

The only issue on appeal is whether the evidence presented at the probation-violation hearing was sufficient to support the hearing justice's finding that Lamoureux had violated the terms of his probation under Rule 32(f) of the Superior Court Rules of Criminal Procedure. Lamoureux characterizes that evidence as "dubious, conflicting, and minimal." He contends that Joanne's testimony about the incident at her apartment on October 7, 2011, conflicted with the account of that incident she gave to police that day. He argues that Joanne's version of that day's events is doubtful, given her testimony that she accompanied him to the Autumnfest on the next day. As to the incident on October 8, 2011, Lamoureux points out that he was not charged as a result of his alleged assault on Joanne. Lamoureux notes that the hearing justice characterized his behavior as "untoward" and "unseemly," which, according to Lamoureux, suggests that the evidence was insufficient to prove that he violated the terms and conditions of his probation.

## III

## Standard of Review

"The sole issue for a hearing justice to consider at a probation-violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. Delarosa, 39 A.3d 1043, 1049 (R.I. 2012)

---

[4] Although Lamoureux's notice of appeal to this Court was premature, we treat such a filing as timely. See State v. Delarosa, 39 A.3d 1043, 1049 n.12 (R.I. 2012) (citing State v. Pona, 13 A.3d 642, 646 n.3 (R.I. 2011)).

(quoting State v. English, 21 A.3d 403, 406 (R.I. 2011)). The state must produce "'reasonably satisfactory' evidence [to support] a finding that the defendant has violated his or her probation." Id. (quoting State v. Bouffard, 945 A.2d 305, 310 (R.I. 2008)). "In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." Id. at 1049-50 (quoting State v. Pona, 13 A.3d 642, 647 (R.I. 2011)). We confine our review of a finding of a violation of probation "to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." Id. at 1050 (quoting English, 21 A.3d at 407). Because the merits of any new charges are not the focus of a probation-violation hearing, see State v. Brown, 915 A.2d 1279, 1282 (R.I. 2007), they are not the focus of our review on appeal.[5]

## IV

### Discussion

After carefully reviewing the record, we are satisfied that the hearing justice did not act arbitrarily or capriciously in finding that Lamoureux had violated the terms and conditions of his probation. With respect to the events of October 7, 2011, Joanne's testimony regarding that incident was consistent in all material aspects with the statement she gave to police that day. That day, and at the hearing, she stated that the incident had occurred around 4 p.m., that Lamoureux had taken $480 from her, and that he slapped her across the face after taking her money. Although she did not mention that Lamoureux had broken one of her chairs when describing this incident on direct examination, as she had told police on the day of the incident,

---

[5] In connection with the events described above, Lamoureux was charged with felony assault with a dangerous weapon and domestic misdemeanor assault. After Lamoureux was adjudged to be a probation violator, those charges were dismissed under Rule 48(a) of the Superior Court Rules of Criminal Procedure.

- 7 -

she did confirm this detail on cross-examination. In our view, the hearing justice did not err in finding that, although Joanne's account of this incident was "bizarre," it was "not unbelievable."

Likewise, we must reject Lamoureux's argument that the hearing justice erred in finding that he had violated his probation by engaging in a "melee" in David's backyard on October 8, 2011. The hearing justice correctly stated that he did not have to determine whether Lamoureux had assaulted David with a dangerous weapon to find that Lamoureux had violated his probation. Correctly focusing on Lamoureux's behavior rather than on the sufficiency of the evidence against him on the new charges, the hearing justice found that Lamoureux "[had] put himself into unseemly and probably criminal activities within [twenty-four] hours of each other." The hearing justice observed the witnesses in this matter, and our precedent requires us to afford deference to his factual findings. We conclude, as did the hearing justice, that the evidence adduced at the hearing was sufficient to support a finding that Lamoureux had violated the terms of his probation.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   State v. Thomas G. Lamoureux.

**CASE NO:**   No. 2012-120-C.A.
(P1/93-2785A)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   January 17, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Francis J. Darigan, Jr.,

**ATTORNEYS ON APPEAL:**

For State:   Lauren S. Zurier
Department of Attorney General

For Defendant:  Lara E. Montecalvo
Office of the Public Defender