**Supreme Court**

No. 2010-342-C.A.

(P2/02-259 AG)

State                              :

    v.                             :

Jason Lopes.                       :

NOTICE:     This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                    :

v.                  :

Jason Lopes.           :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Indeglia, for the Court.** The defendant, Jason Lopes (Lopes or defendant), appeals from a judgment of conviction in Superior Court declaring him to be in violation of his probation and executing six years of his previously imposed sentence. On appeal, he challenges the sufficiency of the evidence in support of this judgment. This case came before the Supreme Court for oral argument on February 6, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On March 27, 2002, Lopes pleaded guilty to possession of a firearm by a person convicted of a crime of violence (count 1), carrying a pistol without a license (count 2), reckless driving (count 3), and driving with a suspended license (count 4). On count 1, he received a sentence of ten years, with four years to serve and six years suspended, and six years probation. On count 2, he received a sentence of ten years, with four years to serve and six years suspended,

- 1 -

and six years probation. On counts 3 and 4, he received a one-year sentence. All sentences were to run concurrently.

On May 4, 2009, Lopes was presented as a violator of the terms and conditions of his probation under Rule 32(f) of the Superior Court Rules of Criminal Procedure, based on an allegation of domestic simple assault occurring on May 1, 2009. The state subsequently withdrew that violation notice.

On May 19, 2009, the state filed a second violation notice under Rule 32(f), this time alleging that, on May 1, 2009, Lopes violated the terms and conditions of his probation by possessing a firearm after having been previously convicted of a crime of violence.[1] On June 15, 2010, Lopes was adjudged to be in violation of his probation by a justice of the Superior Court. The events underlying that adjudication are now before us on appeal. Below, we summarize the relevant testimony from that hearing.

Providence Police Officer Louis Salinaro (Officer Salinaro) testified that, at approximately 7:30 a.m. on May 1, 2009, Latoya German contacted the Providence police alleging that her sister, Nichelle German, had sent her a text message, in which she wrote that she had just been assaulted by Lopes, Nichelle's boyfriend.[2] (Both Latoya and Nichelle were subpoenaed by the state to testify at the violation hearing, but they failed to appear.) In that phone call to police, Latoya also stated that Lopes "was known to carry weapons in the past." Officer Salinaro testified that, shortly thereafter, he responded to Nichelle's second-floor apartment located at 199 Laurel Hill Avenue. He further testified that, prior to arriving at this

---

[1] The state also filed a new charge against Lopes for this conduct under G.L. 1956 § 11-47-5. Following the lower court's determination that Lopes had indeed violated the terms and conditions of his probation, the state later dismissed this charge under Rule 48(a) of the Superior Court Rules of Criminal Procedure.

[2] This Court means no disrespect by referring to some individuals in this opinion by their first names. It is for clarity purposes only that first names are used.

apartment, dispatch informed him and another responding officer, Francis Furtado (Officer Furtado), that Lopes had prior firearm convictions.

Officer Salinaro was the first to arrive at the apartment. When he got there, Nichelle answered the back door. He testified that she "was very nervous," "afraid," and "had a swollen [right] cheek," which he described as a "fresh" injury. She told Officer Salinaro that Lopes had assaulted her when she arrived home the previous night. Officer Furtado was not present for this conversation; he testified that he entered the apartment about ten to twenty seconds after Officer Salinaro.

Upon noticing Nichelle's small child in the kitchen, Officer Salinaro testified that he asked Nichelle "if it was okay for [Officer Furtado and him] to check the apartment to make sure that her [sic] and the baby were all set," to which she obliged. When asked whether anyone else was in the apartment, she responded that her boyfriend had just left.

Officer Salinaro testified that he saw Lopes exit the front bedroom soon thereafter. Nichelle explained that Lopes was her boyfriend. He testified that Nichelle "was acting very afraid" while Lopes "just kept staring at her." She remained "very, very nervous, very fidgety, looking all around the room."

Officer Furtado testified that he then asked Nichelle, in the presence of Lopes, what had happened to her injured face. Nichelle responded that "she fell." Officer Furtado further recalled that Lopes also interjected, stating that "[Nichelle] fell last night when she was out with friends."[3] However, Officer Furtado further testified that later, in the privacy of the kitchen, he again asked Nichelle "what really occurred." In response she told him that she and Lopes had

---

[3] However, we note that Officer Salinaro testified differently. He stated that Lopes did not say anything to the officers regarding the circumstances surrounding Nichelle's injury.

- 3 -

argued the previous night, Lopes called her a "f***in' b****," and that, when she finally went to bed, Lopes then punched her in the face.[4]

Officer Furtado then ran Lopes's name through the National Criminal Identification Center, which revealed that there was an outstanding warrant for his arrest related to his failure to appear for operating a vehicle with an expired license. Another Providence police officer then executed the outstanding arrest warrant and escorted him outside. While Lopes was being escorted out of the apartment, Officer Furtado asked him whether there were any firearms present in the home. Lopes responded that "he used to do that in the past and [that] he no longer does those sort of things."

Officers Salinaro and Furtado both testified that they then obtained Nichelle's permission to search her apartment for firearms.[5] They first entered the bedroom—the same room from which Lopes had initially emerged. On top of a six-foot-tall cabinet in that room, Officer Salinaro observed what appeared to be the handle of a gun "sticking out of the right boot" of a pair of brown men's work boots. Officer Salinaro stated that the cabinet also contained a dark colored T-shirt, and "a couple of duffle bags." He testified that he removed the boot and determined that it indeed contained a gun. He then replaced the boot and gun on top of the cabinet.[6]

Officer Furtado testified that, after discovering the gun, he called for BCI detectives to respond. Detective Douglas Allen (Det. Allen), a BCI detective for the Providence police,

---

[4] As noted above, the state withdrew its violation notice with respect to the charge of domestic simple assault. Although the hearing justice allowed the officers to testify regarding Nichelle's statements concerning alleged domestic abuse, he did not consider that testimony in declaring Lopes to be a violator of the terms and conditions of his probation.

[5] On cross-examination, Officers Salinaro and Furtado both admitted that, when they drafted their witness statements, neither mentioned obtaining Nichelle's consent to search.

[6] On cross-examination, Officer Salinaro admitted that, when he replaced the boot and gun on top of the cabinet, the gun then fell inside the boot.

testified that he reported to Nichelle's home at approximately 8 a.m. on May 1, 2009. When he arrived, he first photographed the work boots and the gun; he then seized the gun.[7] He identified the gun as a semi-automatic nine-millimeter pistol with a magazine, and he noted that the safety was disengaged. After test-firing the gun, he determined that it was a functioning firearm, which contained nine rounds in the magazine. Detective Allen further testified that there were "no usable fingerprints found" on the firearm. The state then rested.

Lopes rested following the state's presentation of evidence. In his argument below, Lopes averred that the state failed to meet its burden of proof in establishing that he was in possession of the firearm in question. All that the state produced, Lopes contended, was that he exited the same bedroom in which the firearm was found. In Lopes's view, the state did not establish any nexus between him and the firearm. Countering this argument, the state argued that the evidence was sufficient for the court to infer that Lopes had "dominion and control" over the firearm, because it was found in a men's work boot, which was located in the bedroom from which he had exited. Additionally, according to the state, since the safety of the firearm was not engaged, this further proved that Lopes's behavior fell short of keeping the peace and being of good behavior.

The hearing justice then rendered a bench decision, acknowledging that, while there was inconsistent testimony as to the exact location of the boot and the firearm when Det. Allen arrived, this inconsistency "[did not] belie the fact that there was a gun, and it was in the proximity of the bedroom, and the defendant came out of the bedroom." He further elaborated that Lopes, who was on probation for possession of a firearm after having been convicted of a crime of violence, had "no business being anywhere near a loaded gun or an unloaded gun."

---

[7] According to Det. Allen, when he arrived at the apartment, the boot and gun were located on the kitchen table.

Considering the totality of the evidence before him, the hearing justice drew a "reasonable inference" that Lopes knew the firearm was in the bedroom and that he had dominion and control over it.

Accordingly, the hearing justice declared Lopes to be in violation of the terms and conditions of his probation and executed six years of his previously imposed sentence. On June 21, 2010, Lopes filed a notice of appeal to this Court.[8]

## II

### Issue on Appeal

On appeal, Lopes contends that the evidence was insufficient to support the hearing justice's finding that he failed to keep the peace or remain on good behavior. He characterizes this finding as both "arbitrar[y] and capricious[ ]." Specifically, Lopes challenges the hearing justice's determination that he was ever in possession of the firearm at issue. According to Lopes, "[t]he most the hearing justice could have reasonably found * * * was [his] mere presence in a place where the [firearm] was discovered."

In countering Lopes's argument on appeal, the state maintains that the hearing justice did not rule in an arbitrary or capricious manner in finding that Lopes violated the terms and conditions of his probation. The state points out that Lopes lied to Officer Furtado twice: first, when he stated that Nichelle's injury was caused by a fall, and second, when he told the officers that there were no firearms present in the house. There was no evidence that any person other than Nichelle and her small child inhabited the house. Therefore, the state argues that it was reasonable for the hearing justice to infer that the firearm belonged to Lopes. Accordingly, the

---

[8] Although judgment did not enter until December 16, 2011, we nonetheless treat his appeal as timely. See Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011).

state maintains that the hearing justice was justified in finding that Lopes failed to keep the peace or remain on good behavior, thereby violating the terms and conditions of his probation.

## III

### Standard of Review

The sole issue for the hearing justice to consider at a probation-violation hearing is "whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. Washington, 42 A.3d 1265, 1271 (R.I. 2012) (quoting State v. Christodal, 946 A.2d 811, 816 (R.I. 2008)). While the burden of proof at a criminal trial requires the state to prove beyond a reasonable doubt that the defendant committed the crime charged, the burden of proof at a probation-violation hearing is significantly lower. State v. Bouffard, 945 A.2d 305, 310 (R.I. 2008). The "state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." Id. (quoting State v. Forbes, 925 A.2d 929, 934 (R.I. 2007)).

Further, "[i]n determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." State v. Delarosa, 39 A.3d 1043, 1049-50 (R.I. 2012) (quoting State v. Pona, 13 A.3d 642, 647 (R.I. 2011)). We limit our review of a finding of a probation violation "to determining 'whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation.'" Washington, 42 A.3d at 1271 (quoting State v. Tetreault, 973 A.2d 489, 492 (R.I. 2009)). "It is not the role of the hearing justice to determine the validity of the specific charge that formed the basis of the violation." State v. Gautier, 774 A.2d 882, 887 (R.I. 2001). Indeed, we emphasize that the merits of any

new charges are not before us on review of an adjudication of a probation violation. See State v. Brown, 915 A.2d 1279, 1282 (R.I. 2007).

## IV

### Discussion

At the outset, we note that Lopes has directed our attention toward the wrong issue. Lopes urges this Court to consider whether the evidence was sufficient to show that he was in possession of the firearm in question. However, the sufficiency of the evidence against Lopes on the charge of possession of a firearm after having been previously convicted of a crime of violence is not the focus of our review, nor was it the focus at the hearing below. Instead, "the sole purpose of a probation-revocation proceeding is for the trial justice to determine whether [the terms and conditions of probation] have been violated." Pona, 13 A.3d at 648 (quoting State v. Sylvia, 871 A.2d 954, 957 (R.I. 2005)).

Here, the state did not have to prove beyond a reasonable doubt (or to any other degree) that Lopes committed the crime of possession of a firearm; instead, "the state need only [have] reasonably satisf[ied] the hearing justice that [Lopes] breached a condition of probation by failing to keep the peace or remain on good behavior." Pona, 13 A.3d at 648 (quoting State v. Jones, 969 A.2d 676, 680 (R.I. 2009)). Therefore, the hearing justice correctly did not consider whether Lopes was actually guilty of the crime of possession of a firearm. See id.

The hearing justice was charged with weighing the credibility of the witnesses who testified at the probation-violation hearing. Pona, 13 A.3d at 647. We believe that the hearing justice aptly fulfilled that obligation. As articulated in his findings, he concluded that the testimony provided by Officers Salinaro and Furtado was "reasonably credible." He found that, while there was some inconsistency in the testimony concerning the exact placement of the

- 8 -

firearm after it was discovered by the officers, this discrepancy did not change the fact that a firearm was found in the very bedroom from which Lopes had exited that same morning. Both Officers Salinaro and Furtado, the hearing justice explained, were veterans in the patrol division. He therefore concluded that their testimony, in which they stated that they replaced the firearm inside the work boot on top of the bedroom cabinet, was more reliable than that of the "minimal[ly] involve[d]" Det. Allen, who stated that the firearm was on the kitchen table when he arrived. We cannot disagree with the hearing justice's conclusion that, based on "all of the facts and circumstances," the "reasonable inference" is that Lopes was "in the bedroom with the gun[,] * * * he knew it was there, * * * [h]e was consciously aware of it, [and] [h]e had dominion and control over it." This Court is therefore satisfied that Lopes failed to keep the peace or remain on good behavior; and, accordingly, we agree with the hearing justice that Lopes violated the terms and conditions of his probation.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.

- 9 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       State v. Jason Lopes.

**CASE NO:**       No. 2010-342-C.A.
                           (P2/02-259 AG)

**COURT:**       Supreme Court

**DATE OPINION FILED:**   March 1, 2013

**JUSTICES:**       Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**       Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                           Associate Justice Francis J. Darigan, Jr.

**ATTORNEYS ON APPEAL:**

                           For State:  Jane M. McSoley
                                   Department of Attorney General

                           For Defendant:  Catherine Gibran
                                   Office of the Public Defender