April 4, 2023

**Supreme Court**

No. 2021-334-C.A.
(P2/16-1112A)
No. 2021-335-C.A.
(P2/18-3790A)

State                          :

    v.                         :

Terrell Bliss.                 :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Terrell Bliss. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The defendant, Terrell Bliss, appeals from two judgments of probation violation entered in separate Superior Court cases, stemming from the same adjudication. The cases have been consolidated on appeal. Before this Court, the defendant asserts that the hearing justice erred because the state did not prove by a preponderance of the evidence that the defendant had violated the terms and conditions of his probation. These consolidated appeals came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in the appeals should not be summarily decided. After considering the parties' written submissions[1] and reviewing the record, we conclude that cause has not been shown and that the appeals may be decided without

---

[1] The parties elected to waive oral argument and rest upon their written submissions.

- 1 -

further briefing or argument. For the reasons set forth herein, we affirm the judgments of the Superior Court.

## I

## Facts and Travel

On May 4, 2017, defendant pled nolo contendere to one count of obstructing the judicial system, for which he was sentenced to five years, with one year to serve, and the remainder suspended, with probation. Later, on October 15, 2020, defendant pled nolo contendere to one count of felony assault, for which he was sentenced to fifty-four months, all of which was suspended, with probation. On March 3, 2021, the state filed a probation-violation report in Providence County Superior Court, pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, in both cases.

Hearings regarding the alleged probation violation were held on two days in 2021.[2] Brendan McKenna, a patrolman for the Providence Police Department, testified at both hearings, and his body-worn camera (bodycam) footage was entered

---

[2] The first hearing was held on June 21, 2021. At the end of the hearing, defendant indicated to the court that he wished to retain new counsel because, according to defendant, another person—Enrique Miranda—had paid for his legal fees, which defendant was not aware of "until a couple hours" before the hearing and he, therefore, did not feel as though his counsel at the time was "on [his] side." Based on defendant's concerns, the hearing justice delayed the hearing without prejudice to the state, noting that there was "no ethical obligation for [counsel] to withdraw from representing" defendant. New counsel was later appointed for defendant, and the second hearing was held on September 28, 2021.

into evidence. We derive the following facts from his testimony and the bodycam footage.

Officer McKenna testified that, on March 2, 2021, at approximately 5 or 5:30 p.m., he stopped a car near the Steven Shaw police substation in Providence, observing the car's tinted windows; he indicated that he "couldn't see into the vehicle at all through the front windshield." Before pulling the car over, he ran the vehicle registration and it came up with the name Enrique Miranda, with whom Officer McKenna was familiar from prior contacts.

After stopping the car in a CVS parking lot, Officer McKenna asked the driver—defendant—for identification. He testified that he recognized defendant's name "from a shots-fired incident." After being advised of the reason for the traffic stop, defendant provided Officer McKenna with his driver's license and showed him a ticket that he had previously received for tinted windows on the same car in January 2021. A second officer arrived on the scene and informed Officer McKenna that defendant had an active arrest warrant. Officer McKenna testified that he then "requested that [defendant] step out of the vehicle so [the officers] could place him into custody."

Officer McKenna then handcuffed defendant and conducted a search, during which he felt "a hard, rock-like substance in his sweatshirt," which he believed felt like crack cocaine. Officer McKenna then asked defendant if he had narcotics on

his person; in response, defendant stated that Officer McKenna "planted the drugs on him." Officer McKenna testified that the drugs were not easily accessible. Another officer then retrieved from defendant's sweatshirt a plastic bag containing "a hard, rock-like white substance" that was divided into seven smaller bags.

After the plastic bag was discovered, defendant "began to tense his body and he started to pull away from" the officers. Officer McKenna testified that he and the other officers were then concerned that defendant was attempting to flee and might "be in possession of narcotics or a weapon." As the officers tried to control defendant, defendant stuffed his hands into his pants, which Officer McKenna testified he took as an indication that defendant might have a weapon or more narcotics. The defendant then resisted the officers' attempts to remove his hands from his pants; when his hands were ultimately removed after "[n]o more than two minutes" there was nothing in his hands.

Subsequently, the officers put defendant in a prone position—"on his stomach, handcuffed behind his back"—and attempted to get him into the police cruiser, "at which point he began to violently move his body" and "might have head-butted the cruiser door." Ultimately, the officers requested a transport van because they could not get defendant into the police cruiser. Officer McKenna testified that defendant was resisting getting into the transport van by struggling and flailing "his body violently" and that he "struck a police officer with a kick" to the

officer's head. That officer then "struck the defendant once in the face with a closed fist[,]" which Officer McKenna affirmed was done in order to gain compliance.

The police conducted a further search of the car and found a firearm in the gear-shift area of the center console. Officer McKenna identified the firearm at trial, and he also testified that he spoke with Miranda, who indicated that he had registered the car for defendant. At the second hearing, the state stipulated that the firearm seized from the car was swabbed for DNA in three spots; although two different sources of DNA were identified, neither was from defendant. The state also identified a report from the Department of Health which concluded that the substance seized from defendant tested positive for cocaine.

Following the testimony and stipulation, defendant argued that the car, the narcotics, and the firearm seized were not his, stressing that the car was registered to another individual and that his DNA was not on the firearm. He asked the court to disregard Miranda's statement to the effect that Miranda had registered the car for defendant because it was "self-serving" and "not believable testimony without Miranda's presence in court to explain that statement." The defendant further alleged that, when he was initially pulled over, he was "compliant[,]" "respectful[,]" and "not evasive[.]" He claimed that, when his foot later contacted an officer's head, it "was unintentional[.]" The defendant ultimately argued that the state "failed in its

burden to establish that [defendant] was aware of the gun, was aware of the drugs, or that * * * the contact to the police officer was intentional."

In response, the state argued that defendant had violated the terms of his probation by obstructing the police and by having drugs and a firearm in his possession. The state submitted, specifically, that defendant had "resisted continuously" and, additionally, that he had been in possession of cocaine intended for distribution and a firearm.

The hearing justice rendered a bench decision on September 29, 2021, finding that defendant had violated the terms and conditions of his probation. She indicated that Officer McKenna's bodycam footage was the most compelling evidence, refuting defendant's claim "that he was complying and cooperative in all respects during the motor vehicle stop and until the time that a bag of suspected narcotics was found to be concealed within a hem of his sweatshirt * * *."

In rendering her decision, the hearing justice found that the bodycam footage was "replete with evidence of the defendant's intentional resisting arrest for the majority of the 30-plus minute video." Specifically, the hearing justice highlighted defendant's "attitude from the inception of the car stop[,]" his "combative tone" and "foul language" during the search, and the fact that he began "flailing about to avoid a further search" after the contraband found on him—ultimately determined to be cocaine—was discovered by Officer McKenna. She noted that the "bad behavior

extended to the point of kicking [another officer] in the head, not because he was struggling to sit up while he was cuffed, but because he was deliberately flailing and preventing a peaceful arrest, physically fighting with members of law enforcement throughout the encounter."

The hearing justice ultimately found that defendant's conduct, which she described as "anything but cooperative and compliant, * * * demonstrated that he failed to keep the peace and be of good behavior." With regard to the drugs found on defendant, the hearing justice determined that the state had "proven by a fair preponderance of the evidence that this defendant failed to keep the peace and be of good behavior by possessing a single bag with seven individual bags therein of what was proven to be cocaine." As to the firearm found in the car, she found that the state had "proven by a fair preponderance of the evidence that the defendant was in the actual or constructive possession of the firearm that was located in the car that this defendant had been using with great regularity and as the primary user for at least six weeks, and that such possession demonstrates * * * that he failed to keep the peace and be of good behavior."

Accordingly, the hearing justice found that defendant had violated the terms of his probation in both cases. She removed three and a half years suspension on each sentence in those cases. Judgments of conviction on the probation violation entered on November 19, 2021. The defendant filed premature but timely notices of

appeal in each case on September 30, 2021. The defendant subsequently filed a motion to consolidate the two cases in this Court, which motion was granted.

## II

## Standard of Review

"This Court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Kenner*, 276 A.3d 357, 361 (R.I. 2022) (quoting *State v. Chandler*, 225 A.3d 946, 947 (R.I. 2020)). We accord deference "to the assessment of the credibility of witnesses made by a judicial officer who has had the opportunity to listen to live testimony and to observe demeanor." *Id.* at 361-62 (quoting *State v. Segrain*, 243 A.3d 1055, 1062 (R.I. 2021)). "[W]e 'will not second-guess supportable credibility assessments of a hearing justice in a probation-revocation hearing.'" *Id.* at 362 (quoting *State v. Molina*, 251 A.3d 485, 493 (R.I. 2021)).

## III

## Discussion

On appeal, defendant contends that the state did not prove by a preponderance of the evidence that he violated the terms and conditions of his probation. Specifically, he argues that the car that defendant was driving was not owned by him, that the gun found in the car was not his gun, and that the drugs found on his

person were not his drugs. The defendant additionally contends that he was "calm and compliant" until the police accused him of possessing drugs and that "[a]ny contact that his foot may have made with a police officer during that attempt to move further into the van was unintentional." The defendant therefore claims that the hearing justice's conclusion that he had violated his probation was erroneous.

The state counters that the hearing justice did not err in concluding that it had proven by a preponderance of the evidence that defendant had violated his probation and that this finding "was supported by the evidence presented and was neither arbitrary nor capricious." The state submits that the bodycam footage supports the finding that defendant was not calm and cooperative and that the hearing justice was correct to reject "defendant's self-serving arguments" with regard to the drugs found in defendant's sweatshirt. The state additionally argues that the hearing justice did not err in finding that defendant had "extended control over the vehicle[,]" including the handgun found in the center console.

"At a probation-violation hearing, the sole issue for a hearing justice is whether the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *Kenner*, 276 A.3d at 361 (quoting *Molina*, 251 A.3d at 493). "The burden of proof at a probation-violation hearing is much lower than the standard of beyond a reasonable doubt used at criminal trials." *Id.* (brackets omitted) (quoting *Molina*, 251 A.3d at 493). "To prove a violation,

'the state must establish by a fair preponderance of the evidence' that the defendant violated their probation." *Id.* (quoting *Segrain*, 243 A.3d at 1061). "To determine whether the defendant has committed a violation, the hearing justice weighs the evidence and assesses the credibility of the witnesses." *Id.* (quoting *Molina*, 251 A.3d at 493).

After reviewing the record, we conclude that the hearing justice did not err in finding by a preponderance of the evidence that defendant had violated his probation. The bodycam footage clearly shows defendant's resistance to a peaceful arrest, which escalated when Officer McKenna touched what he presumed to be contraband in the sweatshirt worn by defendant.

Furthermore, and perhaps most damning for defendant, is the cocaine seized from his sweatshirt, which was packaged in a manner that could reasonably be presumed to have been prepared for distribution given the number of smaller bags found inside it. *See State v. Storey*, 8 A.3d 454, 462 (R.I. 2010) (stating that "twelve cut plastic baggies," among other things, helped support a search warrant and pointed to the "fair probability that drugs and the indicia of drug distribution" would be found at the defendant's residence). Regardless of whether defendant's conduct was criminal in nature, it certainly "amount[ed] to a failure to keep the peace and remain of good behavior." *Kenner*, 276 A.3d at 363 (quoting *Molina*, 251 A.3d at 493).

With regard to the gun, this Court held in *State v. Lopes*, 60 A.3d 604 (R.I. 2013), that it is appropriate in a probation-violation proceeding for the hearing justice not to "consider whether [the defendant] was actually guilty of the crime of possession * * *." *Lopes*, 60 A.3d at 609. Here, the record supports the hearing justice's finding that the state had "prove[d] by a fair preponderance of the evidence that the defendant was in actual or constructive possession of the firearm that was located in the car that this defendant had been using with great regularity and as the primary user for at least six weeks[.]" Thus, the hearing justice reasonably determined "that such possession demonstrates again that [defendant] failed to keep the peace and be of good behavior."

We are therefore of the opinion that the hearing justice did not "act[] arbitrarily or capriciously in finding a violation." *Kenner*, 276 A.3d at 361 (quoting *Chandler*, 225 A.3d at 947). Accordingly, we uphold the judgments of probation violation.

## IV

### Conclusion

For the reasons set forth herein, we affirm the judgments of the Superior Court. The records may be returned to the Superior Court.

- 11 -

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| Title of Case | State v. Terrell Bliss. |
| Case Number | No. 2021-334-C.A. (P2/16-1112A)<br><br>No. 2021-335-C.A. (P2/18-3790A) |
| Date Opinion Filed | April 4, 2023 |
| Justices | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| Written By | Chief Justice Paul A. Suttell |
| Source of Appeal | Providence County Superior Court |
| Judicial Officer from Lower Court | Associate Justice Kristin E. Rodgers |
| Attorney(s) on Appeal | For Plaintiff:<br><br>Mariana E. Ormonde<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |