STATE

v.

**Yoneiry DELAROSA.**

No. 2011–12–C.A.

Supreme Court of Rhode Island.

March 29, 2012.

Lauren Zurier, Esq., Providence, for State.

Janice Weisfeld, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The defendant, Yoneiry Delarosa (defendant or Delarosa), appeals from a Providence County Superior Court judgment adjudicating him a violator of probation. Delarosa submits on appeal that the hearing justice erred (1) by crediting the testimony of Christina Bartley (Bartley) after she was offered a favorable plea disposition by the state to testify against him; (2) in overruling defense counsel's objection to certain testimony by Bartley about which he had not been apprised prior to the hearing; and (3) by failing to allow defense counsel or Delarosa the opportunity to address the court prior to sentencing. This case came before the Supreme Court at North Providence High School for oral argument on November 29, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On January 2, 2009, Delarosa pleaded *nolo contendere* in Providence County Su-

perior Court case number P2/09–1A to charges of unlawful possession of a controlled substance with intent to deliver (count 1), for which he was sentenced to five years, with six months to serve and the remainder suspended, with probation; and conspiracy to violate the Uniform Controlled Substances Act, G.L.1956 chapter 28 of title 21 (count 2), for which he received a five-year suspended sentence, with probation, to run concurrently with the sentence imposed for count 1. Delarosa completed his term of incarceration at the Adult Correctional Institutions and was subsequently released.

On July 27, 2010, a home-invasion robbery occurred at 169 Almy Street in Providence, Rhode Island, in which Delarosa was alleged to have participated. On July 30, 2010, the state filed a notice pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure,[1] alleging that Delarosa had violated the terms and conditions of his probation in Superior Court case number P2/09–1 A. A violation hearing took place over five days in August and September 2010, during which the court heard from five witnesses: Jose Silva (Silva), the alleged victim of the robbery; Wandalyz Maldonado (Maldonado), Silva's girlfriend; Angelina Breault (Breault), a witness who was also present at the time of the robbery; Det. Ronald Riley (Det. Riley) of the Providence Police Department; and Bartley, the driver of the car involved in the robbery.

The court first heard testimony from Silva, who recounted the events of July 27, 2010. On that day, at approximately 5:30 p.m., Silva arrived at Maldonado's second-floor apartment at 169 Almy Street in Providence, Rhode Island. Silva stated that Jason Weeks (Weeks), one of his workers on a paint job, came to the apartment to get paid, accompanied by Weeks's girlfriend, Breault, and their nine-month-old son. Silva and Maldonado's ten-month-old daughter were also in the parlor along with Weeks's son. Silva testified that the two couples talked in the parlor for about forty-five minutes to an hour, at which point a man wearing a hockey goalie's mask entered the apartment brandishing a silver and black gun.[2] Silva then saw a second man, who had a shirt over his face and was just inside the apartment. A third man was just outside the apartment doorway and wore a black hat and had a red bandana covering the bottom half of his face.

Silva testified that the gunman repeatedly asked him "where is the money?", to which Silva replied that he did not have any. According to Silva, the second intruder instructed the gunman to hit Silva with the gun. The gunman complied, struck the back of Silva's head with the gun, and again demanded money. Silva further testified that the gunman was "probably Spanish," taller than he but thinner, and had green eyes. Silva described the second intruder as heavyset and shorter than the gunman, and the third man as dark-skinned, skinny, and taller than the gunman. Silva added that the gunman fired a bullet into the floor two feet away from his daughter, tried to pull Silva "out of the way," and then lunged toward Maldonado. It appeared to Silva that the gunman was then trying to grab his daughter; however, he instead

---

1. Rule 32(f) of the Superior Court Rules of Criminal Procedure governs revocation of probation proceedings.

2. Silva described the hockey goalie's mask as "white" and similar to that worn by the "Ja-

son Voorhees" character in the "Friday the 13th" horror movies. He described the gun as having a scope, a silver long barrel and chamber, and a black part that was "probably the handle."

took a plasma screen television and ran from the apartment with the other intruders. Silva explained that he and Weeks followed them and discovered the television abandoned in an alley, along with some clothing he recognized as worn by them. Silva immediately called the police.

The state's next two witnesses were Maldonado and Breault. They both corroborated Silva's testimony that one man was armed with a silver gun and wore a hockey goalie's mask. Maldonado testified that there were three men but Breault stated that she saw only two. Breault testified that the gunman had tattoos on at least one arm. Further, she confirmed that one of the men had a red cloth covering his face and that the gunman struck Silva with the gun. The witnesses testified consistently that the gunman fired a shot toward the area of the two children, that he grabbed the plasma screen television, and that he ran from the apartment with the other intruders.

Detective Riley testified next. He recalled that on July 27, 2010, a radio call came in about a home invasion at 169 Almy Street.[3] According to Det. Riley, the dispatcher relayed that the suspects had fled the scene of the robbery in what was believed to be a black Ford with a temporary plate in the rear window and a "J.D. Byrider" placard in place of the rear license plate, and in which a "black female" was the driver. Detective Riley proceeded in the direction of the robbery scene and soon saw a black vehicle matching the dispatcher's description. Detective Riley

subsequently stopped the vehicle and identified the driver as Bartley, who was alone at that point. After notifying police officers at the robbery scene that he had apprehended Bartley, Det. Riley was informed that a witness was to be transported to his location in order to further identify Bartley as a suspect in the robbery. He testified that a short time later, the witness, Marcus Borgess, confirmed through a showup identification[4] that Bartley was in that vehicle at the scene of the robbery. Bartley was subsequently arrested.

The state then presented Bartley as its final witness. At the time of her arrest, she worked at a Wal–Mart store on Silver Spring Street in Providence and was a student at Providence College. She testified that on July 27, 2010, at approximately 4:30 p.m., her boyfriend Devon Letourneau (Letourneau) and two other individuals she did not know came to her place of employment. Letourneau had been using her car for the day. After finishing her shift, she left with Letourneau and the other two men in her black Ford Focus. She drove, while Letourneau sat in the passenger seat and the other two men occupied the back seat. Bartley testified that she saw the faces of the unknown men for five to ten minutes inside the Wal–Mart, and also while she was driving, "looking back from time to time" and through the rearview mirror of her car. Bartley recalled driving around for twenty to twenty-five minutes. She stated that they first headed to the "Plainfield" area of Providence[5] and then

3. While the record does not clearly indicate that Det. Riley was in his patrol car at the time he received the radio dispatch, his testimony does support such an inference, in that after receiving the description of the suspects and the vehicle, he "proceeded to drive up into [the area of the robbery]."

4. A "showup" is "[a] pretrial identification procedure in which a suspect is confronted with a witness to or the victim of a crime. Unlike a lineup, a showup is a one-on-one confrontation." Black's Law Dictionary 1506 (9th ed. 2009).

5. The Plainfield area of Providence includes the immediate surrounding area of Plainfield

to the Federal Hill area, where she dropped the three men off on Almy Street. She again observed the men's faces when they left the car. Bartley indicated that the man sitting behind Letourneau was called "Cachulo," whom she later identified as Delarosa. Bartley also testified that somewhere between the Plainfield area and the Federal Hill area, Letourneau told her to pull over. Letourneau and Delarosa went to the trunk of the car; and, after both reentered the car, Letourneau handed a silver gun to Delarosa, who was seated behind him. She further stated that Delarosa had the gun and a mask, which she described as a "Jason" mask or "ski mask," when he left the car.

Bartley testified that after she dropped the three men off on Almy Street, she left the area, but returned about fifteen minutes later. She then saw Delarosa waving at her from the sidewalk near a corner store farther down the street from the drop-off site. According to Bartley, she picked up Delarosa and drove him to the "Hartford Projects." [6] A short time later, while returning once again to the Federal Hill neighborhood to pick up Letourneau, she was arrested. Later, at the police station, she identified Delarosa's photo as well as photos of the other two participants.[7] Also at the police station, Bartley provided a recorded statement describing the events of July 27, 2010.[8]

On cross-examination, Bartley indicated that the three men discussed their planned robbery while she drove them around. She also acknowledged that she had participated in robberies with Letourneau in the past and had done so as recently as a few days prior to the robbery on July 27, 2010.[9] Bartley was also questioned about her cooperation agreement, under which the state promised that she would be sentenced to no more than three years for a conspiracy charge and that it might recommend she receive credit for "time served." [10]

On September 20, 2010, the hearing justice issued a bench decision in the matter.[11] She found the testimony of the three witnesses who were present during the robbery to be "credible and relevant." The

---

Street and is located in the southwest sector of the city.

6. While not indicated in the record, we note that the "Hartford Projects" to which Bartley referred is the public housing development known as Hartford Park, presently operated by the Providence Housing Authority. *See* Providence Housing Authority, http://www.pha-providence.com/hartford_park.php (last visited Mar. 14, 2012).

7. After Bartley finished her testimony in regard to the identifications, defense counsel moved to suppress Bartley's out-of-court identification of Delarosa on the grounds that the photo array was unduly suggestive. The hearing justice ruled, however, that the photo array was not impermissibly suggestive and that Bartley's identification had independent reliability.

8. Defense counsel was provided with Bartley's recorded statement and had that statement transcribed.

9. Bartley testified that in a previous robbery, Letourneau had a silver gun and had threatened a store clerk with it. She also admitted that she lied in her statement to the police on July 27, 2010, in telling them that she had not participated with Letourneau in past robberies. She acknowledged that she did so in order to protect herself and Letourneau that day.

10. "Time served" is an oft-used expression describing a sentencing disposition whereby a defendant is sentenced to the same jail time that he or she is credited with serving while in custody generally while awaiting trial. *See* Black's Law Dictionary 1486 (9th ed. 2009).

11. The violation proceeding was consolidated with Delarosa's bail hearing.

hearing justice also found that Bartley had several opportunities to observe the men who rode with her in her Ford Focus, and that Bartley "credibly identified" Delarosa as the person known to her as "Cachulo" who rode with her to the robbery. She was not persuaded that Bartley's cooperation agreement wholly discredited her testimony. The hearing justice noted that Bartley's testimony placed Delarosa at the scene of the robbery and indicated that Delarosa conspired with the other participants to commit first-degree robbery. She further found that Bartley's testimony was corroborated by the testimony of the eyewitnesses present in the apartment during the robbery.

 After making her findings, the hearing justice declared that she was reasonably satisfied that Delarosa had failed to keep the peace and be of good behavior. She noted that although there was no proof that Delarosa was the gunman, there was evidence showing that he conspired to commit the robbery. The hearing justice then sentenced Delarosa, removing the suspension on three and one half years from his previously imposed sentence on count 1 in P2/09–1A and on five years from his suspended sentence on count 2. Both sentences were to run concurrently. On September 22, 2010, Delarosa filed a notice of appeal in Superior Court. Final judgment was entered on September 28, 2010.[12]

## II

## Issues on Appeal

Delarosa advances three issues on appeal. He first argues that the hearing justice erred in crediting the testimony of Bartley, the only witness who tied him to the robbery, after she was offered an "in-credible deal" by the state to testify against him. Second, he maintains that the hearing justice erred in overruling defense counsel's objection to Bartley's testimony concerning her alleged second encounter with Delarosa after the robbery occurred because defense counsel had not been apprised of this information prior to the hearing. Lastly, Delarosa contends that the hearing justice erred when she failed to allow defense counsel or Delarosa the opportunity to address the court before sentencing.

## III

## Standard of Review

 "The sole issue for a hearing justice to consider at a probation violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." *State v. English*, 21 A.3d 403, 406 (R.I.2011) (quoting *State v. Christodal*, 946 A.2d 811, 816 (R.I. 2008)). "[T]he state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." *State v. Bouffard*, 945 A.2d 305, 310 (R.I.2008) (quoting *State v. Forbes*, 925 A.2d 929, 934 (R.I.2007)). "Consequently, the 'reasonably satisfied standard * * * should be applied to whether [the] defendant maintained the conditions of his [or her] probation' and not to the issue of the defendant's guilt with respect to the new charges." *State v. Pona*, 13 A.3d 642, 647 (R.I.2011) (quoting *State v. Sylvia*, 871 A.2d 954, 957 (R.I. 2005)).

██ "In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with

---

**12.** Although premature, Delarosa's appeal is considered timely by this Court. *See State v.* *Pona*, 13 A.3d 642, 646 n. 3 (R.I.2011).

weighing the evidence and assessing the credibility of the witnesses." *Pona*, 13 A.3d at 647 (quoting *State v. Tetreault*, 973 A.2d 489, 492 (R.I.2009)). "It is well established that '[t]his Court's review of a hearing justice's decision in a probation-violation proceeding is limited to considering whether the hearing justice acted arbitrarily or capriciously in finding a violation.'" *English*, 21 A.3d at 407 (quoting *Sylvia*, 871 A.2d at 957).

# IV

## Discussion

### A

### Credibility of Christina Bartley

■ Delarosa contends that the hearing justice erred in finding Bartley's testimony to be credible. He points out that Bartley is an admitted criminal who lied to the police and received an extremely favorable plea offer in exchange for her testimony. He contends that these factors should have discredited her testimony. Delarosa also argues that Bartley's testimony regarding her return trip to the Almy Street area where she picked up Delarosa negates her credibility because it "defies belief" that she would not have given this information to the police in the first instance, if truthful.[13] As to each of these contentions, we disagree.

■ The record reveals that the hearing justice noted that many details provided by Bartley were corroborated by the testimony of the victims of the robbery. For example, Bartley described the "Jason"-style mask and the silver gun carried by the individuals in her car, as did the victims. Furthermore, the instances in which Bartley lied to the police pertained not to the robbery at issue but concerned her involvement with Letourneau in other robberies. The hearing justice found that Bartley credibly identified Delarosa, and further found that she provided credible testimony indicating that Delarosa was "involved in and conspired with [others] to commit a first-degree robbery." This Court "will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing." *Pona*, 13 A.3d at 647 (quoting *State v. Jones*, 969 A.2d 676, 679 (R.I.2009)); *see also State v. Gauthier*, 15 A.3d 1004, 1008 (R.I.2011). Such is the case here.

### B

### Discovery Issue

■ Delarosa maintains that the hearing justice erred in overruling his objection to Bartley's testimony regarding her return trip to the Almy Street area where she had a second encounter with him because Delarosa's counsel had not been apprised of this information prior to the violation hearing. Delarosa acknowledges on appeal that pre-trial discovery pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure does not apply to probation-violation proceedings.[14]

---

**13.** Bartley did not mention this return trip in her statement to the police on July 27, 2010.

**14.** Rule 16 of the Superior Court Rules of Criminal Procedure states in pertinent part:
"(a) *Discovery by Defendant.* Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the exis-

tence of which is known, or by the exercise of due diligence may become known to the attorney for the State:
\* \* \*
"(8) as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the

*See State v. Gautier,* 950 A.2d 400, 408 (R.I.2008) ("A probation-violation hearing is a civil proceeding to determine whether a probationer has kept the peace and been of good behavior * * *."). Nevertheless, Delarosa argues that minimum due process and fundamental fairness required the state to inform him of Bartley's testimony prior to the violation hearing.

The state responds that it could not have provided this information to Delarosa in advance of the proceeding because no written or recorded statement regarding that specific testimony existed for the state to produce. Furthermore, the state notes that pursuant to Rule 26.1 of the Superior Court Rules of Criminal Procedure, it was required only to turn over written or recorded statements by Bartley after she had testified to such information at the violation proceeding.[15] *See State v. Cianci,* 430 A.2d 756, 760 (R.I.1981) (acknowledging "[t]hat [Rule 26.1] provides that after a witness called by the prosecution has testified on direct examination, a defendant may obtain any witness's statement in the possession of the attorney for the state, or under his control, which relates to the subject matter to which the witness testified"). Following defense counsel's request for additional statements made by Bartley, the state's attorney indicated that there were no additional record-

ings or written statements on the subject to which she was going to testify. Ultimately, the hearing justice ruled that the state had complied with Rule 26.1 because the state had in fact turned over to the defense all existing statements made by Bartley.

■ In regard to discovery in the context of probation-violation hearings, this Court has held that such a hearing "is not part of the criminal-prosecution process; therefore, it does not call for the 'full panoply of rights' normally guaranteed to defendants in criminal proceedings." *State v. Vashey,* 823 A.2d 1151, 1154–55 (R.I.2003) (quoting *Hampton v. State,* 786 A.2d 375, 379 (R.I.2001)). "The minimum due process requirements of a violation hearing call for the notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence in [the] defendant's behalf, and the right to confront and cross-examine the witnesses against [the] defendant." *Id.* at 1155 (quoting *State v. Casiano,* 667 A.2d 1233, 1239 (R.I.1995)). This Court has also recognized that "probation-violation hearings are 'frequently held without the benefit of preparation that precedes a criminal trial' * * *." *State v. Gautier,* 871 A.2d 347, 359 (R.I.2005) (quoting *Commonwealth v.*

---

possession of the State, a summary of the testimony such person is expected to give at the trial;
" * * *
"(j) *Applicability of Rule.* This rule applies only to criminal trials in the Superior Court."

**15.** Rule 26.1 of the Superior Court Rules of Criminal Procedure reads in pertinent part:
"(a) *Production of Statements.* If pre-trial discovery pursuant to Rule 16 has not occurred, after a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the State or the defendant and the defendant's

attorney, as the case may be, to produce, for the examination and use of the moving party, any statement (as defined in subdivision (e)) of the witness that is in their possession or under their control, and that relates to the subject matter concerning which the witness has testified.
" * * *
"(f) *Scope of Rule.* This rule applies at trial and at pre-trial hearings, such as preliminary examinations, suppression hearings, and post-trial proceedings, such as sentencing proceedings, hearings to revoke or modify probation, and other post-conviction proceedings."

*Cosgrove,* 427 Pa.Super. 553, 629 A.2d 1007, 1011 (1993)).

Since Bartley revealed the information concerning her second encounter with Delarosa for the first time at the violation hearing, and no written or recorded statement existed on this particular issue, the hearing justice did not err in finding no discovery violation on the part of the state and overruling Delarosa's objection.[16]

## C

### Right to Allocution

 Lastly, Delarosa argues that the hearing justice erred in failing to allow him or his defense counsel the opportunity to address the court prior to sentencing. Delarosa acknowledges on appeal that, except where consecutive sentences are involved, allocution is generally not required in a violation proceeding. He points out, however, that this Court has indicated that the "better practice" is to allow it. *See State v. Ratchford,* 732 A.2d 120, 123 (R.I. 1999). While consecutive sentences were not imposed in this case, Delarosa nevertheless argues that this Court should establish a new rule by applying the right of allocution to all probation violation cases.

In countering, the state contends that Delarosa was not entitled to allocution in this context under existing authority. The state further argues that Delarosa waived this issue because he never requested the opportunity to speak nor asked the court to create a new rule.

 We have previously held that in violation hearings, "the better practice is to permit counsel to address the court concerning any factors which may assist the court in fashioning a sentence that 'as to the court may seem just and proper.'" *Ratchford,* 732 A.2d at 123 (quoting G.L. 1956 § 12–19–9). However, in *State v. Jones,* 969 A.2d 676 (R.I.2009), this Court also stated that allocution was not required prior to sentencing in a probation-violation case in which consecutive sentences were not imposed or a sentence on more than one case was not levied. *Id.* at 682; see also *State v. Nania,* 786 A.2d 1066, 1069 (R.I.2001). The hearing justice correctly followed the holdings set forth in *Ratchford* and *Jones,* and we decline to accept Delarosa's invitation to reconsider these well-reasoned opinions.[17]

After careful review, we conclude that reasonably satisfactory evidence existed to support the hearing justice's finding that the defendant violated the terms and conditions of his probation. Therefore, it is our opinion that the hearing justice acted neither arbitrarily nor capriciously when she adjudicated the defendant a probation-violator based on the record before her.

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior

---

**16.** The record reflects that Delarosa did not request a continuance at the time he objected to Bartley's testimony regarding the second encounter. We note that under Rule 16(i), a trial justice has the ability to grant a requested continuance, among other remedies, "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [Rule 16] or with an order issued pursuant to this rule * * *." *See also State v. Gonzalez,* 923 A.2d 1282, 1286 (R.I.2007) ("Rule 16(i) pro-

vides the trial justice with a range of sanctions for discovery violations.").

**17.** Furthermore, Delarosa may have waived the issue of his right to allocution because he did not indicate to the hearing justice that he wished to address the court. Under this Court's "raise or waive" rule, a defendant has not preserved an issue for appellate review if he has failed to raise a specific objection at trial. *State v. McManus,* 990 A.2d 1229, 1237 (R.I.2010).

Court, to which we remand the record in
this case.