**Supreme Court**

No. 2012-5-C.A.

(W1/96-595-A)

|                        |   |
|------------------------|---|
| State                  | : |
| v.                     | : |
| Christopher S. Thornton. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                               :

Christopher S. Thornton.           :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  In 1997, after representing himself at trial, Christopher S. Thornton was convicted of kidnapping, domestic felony assaults, intimidation of a witness, and violation of a no-contact order.  This Court affirmed his convictions in State v. Thornton, 800 A.2d 1016, 1045 (R.I. 2002), which sets forth the facts and procedural history of his prosecution.  After Thornton filed for postconviction relief, the Superior Court denied his application.  We affirmed that denial in Thornton v. State, 948 A.2d 312, 317 (R.I. 2008).[1]  In this appeal, which follows from the Superior Court's denial of several motions, properly treated as a subsequent application for postconviction relief, Thornton again attempts to convince us that his convictions should be overturned.

This case came before the Supreme Court for oral argument on April 2, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or

---

[1] Thornton also filed an unsuccessful petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with the United States District Court for the District of Rhode Island.  See Thornton v. Wall, 2003 WL 1810524 (D.R.I. Mar. 31, 2003).

argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On August 3, 2009, Thornton filed several pro se motions in the Superior Court, including a motion to dismiss or vacate count 3 of the indictment; a motion to vacate the consecutive sentence imposed; and a motion for discovery and inspection of victim-impact statements from 1996 and 1997. Thornton also filed a petition for a writ of habeas corpus, motions to assign the matters for a hearing and status conference, a motion to proceed in forma pauperis, and a motion to appoint counsel. About three months later, on October 30, 2009, Thornton filed further motions and supporting materials: a motion to correct an illegal sentence; a motion to reopen for a new trial based on newly discovered evidence; and a supplemental memorandum in support of his motion to dismiss or vacate.

The motions filed in August and October 2009 set forth two grounds for relief. First, Thornton contended that his conviction on both count 3 (assault with a dangerous weapon) and count 5 (felony assault resulting in serious bodily injury) violated the constitutional prohibition against double jeopardy. Second, he argued that the prosecutor had violated Rule 16 of the Superior Court Rules of Criminal Procedure by failing to produce certain victim-impact statements in response to his discovery requests.

Counsel was appointed to represent Thornton on October 30, 2009. On March 23, 2010, counsel moved to withdraw. A lengthy Shatney memorandum accompanied this motion.[2]

---

[2] In Shatney v. State, 755 A.2d 130, 135 (R.I. 2000), we held that "counsel for an applicant [for postconviction relief] may request permission from the court to withdraw, based upon an assessment that the application has no arguable merit." This request must be supported by a

Regarding Thornton's double jeopardy argument, counsel noted that it was both barred by the doctrine of res judicata and meritless under State v. Boudreau, 113 R.I. 497, 503, 322 A.2d 626, 629 (1974) (reciting the "same offense" test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932)). Thornton's Rule 16 argument fared no better under counsel's analysis. Counsel observed that this argument was premised on State v. Stravato, 935 A.2d 948 (R.I. 2007), which was decided ten years after Thornton was convicted. Counsel wrote that the rule announced in Stravato should not be applied retroactively and therefore should not serve as a basis on which relief could be granted.

In a letter to the Superior Court justice who would soon conduct a hearing on Thornton's claims for relief, Thornton objected to the positions taken by his counsel in the Shatney memorandum. On April 8, 2010, the parties appeared before that hearing justice. At the outset, the hearing justice and Thornton's counsel agreed that the motions which Thornton had filed in August and October 2009 would be treated as an application for postconviction relief. Thornton's counsel then briefly reiterated the arguments in his Shatney memorandum. The hearing justice then permitted Thornton to respond.

Thornton took issue with his counsel's conclusion that the prosecution's failure to produce certain victim-impact statements could not serve as grounds for postconviction relief. He stated, "I am not asking you [the hearing justice] to decide if Stravato applies. I am asking you to decide the [longstanding] case law of the rule of Brady v. Maryland to determine if a Rule

memorandum in which counsel "lists each issue the applicant wished to raise, and explains why in [his or her] professional opinion those issues and any others that he or she may have investigated lacked merit." Id.

16 violation occurred."[3] Thornton contended that <u>Stravato</u> "[did] not create a new rule," but rather "reinforce[d]" the state's obligation to comply with Rule 16.

Thornton also submitted an affidavit from the attorney who had served as his standby counsel at trial. That attorney confirmed that the state had not produced the victim-impact statements at issue in response to Thornton's initial discovery request. Additionally, he averred that the state had objected to a subsequent discovery request filed by Thornton and, at a hearing before the trial justice, had stated that it had produced everything required by <u>Brady</u> and Rule 16. The state's answer to Thornton's discovery request and Thornton's subsequent request for discovery were attached to the affidavit.

The hearing justice first determined that Thornton's double jeopardy argument "ha[d] no merit whatsoever," and, accordingly, he denied relief on this ground.[4] He then heard from the state's attorney, who confirmed that the state had not given the victim-impact statements to Thornton. The state's attorney denied that this nondisclosure was deliberate and denied that Thornton had been prejudiced as a result. Another attorney for the state provided details about the victim-impact statements at issue. The first, from Debra Means, was received by the Department of Attorney General on November 13, 1996. The second, from Diane Sullivan, was received on November 20, 1996. Means, the primary victim, was Thornton's ex-girlfriend. He was convicted of kidnapping and assaulting her, as well as violating a no-contact order imposed

---

[3] We discuss <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), in detail below. <u>See</u> part IV-B, <u>infra</u>.

[4] Because the hearing justice's conclusion on this issue is manifestly correct, and because Thornton has not meaningfully briefed his objection to it on appeal, we decline to address it. <u>See</u> <u>Rivera v. State</u>, 58 A.3d 171, 179 (R.I. 2013) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." (quoting <u>Wilkinson v. State Crime Laboratory Commission</u>, 788 A.2d 1129, 1131 n.1 (R.I. 2002)).

for her protection. Sullivan was not physically injured; she was the victim with respect to the count of witness intimidation.

The hearing justice adjourned the hearing, reserved ruling on the motion, and ordered the state to provide Thornton (through counsel) and the court with copies of those statements, which it did.[5] Thornton's counsel then filed a supplemental memorandum in support of his motion to withdraw. This supplemental Shatney memorandum concluded that Thornton had "suffered no demonstrable procedural prejudice" as a result of the state's inadvertent nondisclosure of the victim-impact statements and that those statements did not meet Brady's standard of materiality. The state also filed a memorandum in which it urged the court to reject Thornton's arguments.

Another hearing on this matter was held on September 27, 2010. The hearing justice asked Thornton to explain how he could have used the information contained in the victim-impact statements if those statements had been disclosed to him before trial. Thornton initially responded that he "would have been able to confer with [standby] counsel to determine [how to utilize the statements] * * *." He speculated that the statements could have led to medical records that might have contained impeachment evidence. He elaborated as follows: "* * * I believe that [Means] may have * * * disclosed in her counseling session[s] some things that may not have been said at trial. * * * [F]or instance, she could [have said] that she was not extremely affected under the circumstances * * *." When Thornton stated that Sullivan "made accusations in the victim[-]impact statement that [he felt he] could have challenged," the hearing justice asked him to be more specific. Thornton responded, "[t]he entire content of it. * * * I could

---

[5] The state's supplemental answer to Thornton's discovery request indicates that it was filed in open court on May 8, 2010. This appears to be an error because, although a hearing took place on April 8, 2010, no further hearings were held until September 27, 2010. The supplemental Shatney memorandum indicates that the state produced the victim-impact statements on April 8, 2010.

have used * * * the whole entire content [of Means's and Sullivan's statements] to determine how I wanted to approach the witness[es] through cross-examination."

The hearing justice continued the matter once again to ensure that the state had, in fact, given Thornton each and every victim-impact statement in its possession. On October 21, 2010, the hearing justice filed a written decision, denying Thornton's claim for relief. At the outset, the hearing justice stated that "Thornton ha[d] abandoned any claims under Stravato." He concluded that Thornton was not entitled to a new trial based on Brady "because the information in the victim[-]impact statements was either immaterial or already provided in discovery." He found that the statements provided "neither exculpatory nor impeachment evidence." He also observed that the statements had been filed with the court and were thus "readily available to both Thornton * * * and his standby counsel." Accordingly, the hearing justice concluded that Thornton was not entitled to a new trial under Rule 33 of the Superior Court Rules of Criminal Procedure.[6]

In an order entered on October 27, 2010, Thornton's postconviction counsel was granted permission to withdraw. Thornton filed a pro se notice of appeal of the Superior Court's decision on November 8, 2010. By order dated November 9, 2012, this Court remanded the case for entry of final judgment, which occurred on November 30, 2012.[7]

---

[6] On appeal, the state notes that, "[b]ecause Thornton filed his [motions] concerning the victim[-]impact statements well over three years after judgment was entered against him in the criminal case, technically the hearing justice should not have handled the matter under Rule 33 [of the Superior Court Rules of Criminal Procedure] at all." We agree. However, as the state concedes, "the standard for obtaining a new trial based on newly discovered evidence is the same under Rule 33 as it is in the [postconviction-relief] context, see, e.g., Ferrell v. Wall, 889 A.2d 177, 184 (R.I. 2005)."

[7] We treat Thornton's appeal as timely even though it preceded the Superior Court's entry of final judgment. See State v. Lamoureux, 58 A.3d 189, 192 n.4 (R.I. 2013) (citing State v. Delarosa, 39 A.3d 1043, 1049 n.12 (R.I. 2012)).

## II

## Issue on Appeal

The issue presented for our decision is straightforward—did the hearing justice err in finding that Thornton was not entitled to postconviction relief based on the prosecution's failure to disclose certain victim-impact statements?[8]  Thornton maintains that he is entitled to a new trial based on the state's violation of Rule 16 and Brady.  The state contends that Thornton's claim is not only barred by res judicata, but also is meritless.  Furthermore, the state argues that Thornton has not satisfied the test set forth in G.L. 1956 § 10-9.1-1, which permits the granting of a new trial based upon newly discovered evidence.

## III

## Standard of Review

Rhode Island's statutory postconviction remedy is set forth in chapter 9.1 of title 10. Section 10-9.1-1 enumerates the circumstances in which "one who has been convicted of a crime may seek collateral review of that conviction * * *."  See Anderson v. State, 45 A.3d 594, 601 (R.I. 2012) (quoting Rice v. State, 38 A.3d 9, 16 (R.I. 2012)).  In reviewing an application for postconviction relief, "[t]his Court will not impinge upon the fact-finding function of a hearing justice * * * 'absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings.'"  Id. (quoting Chapdelaine v. State, 32 A.3d 937, 941 (R.I. 2011)).

We employ a de novo standard of review with regard to "questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights * * *."  Anderson, 45 A.3d at 601 (quoting State v. Laurence, 18 A.3d 512, 521 (R.I. 2011)).

---

[8] We agree with the hearing justice's determination that Thornton's claim for relief should be analyzed as a postconviction-relief application.

Even when applying the <u>de</u> <u>novo</u> standard of review to such issues, however, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." <u>Id.</u> (quoting <u>Rice</u>, 38 A.3d at 16). "An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." <u>Id.</u> (quoting <u>Mattatall v. State</u>, 947 A.2d 896, 901 n.7 (R.I. 2008)).

## IV

## Discussion

Because Thornton claims that he is entitled to postconviction relief based on discovery violations, we first review the pertinent events in the pretrial phase of his prosecution. Thornton was indicted in September 1996. Shortly thereafter, on October 2, 1996, he filed a request for discovery. This request more or less mirrored the provisions of Rule 16; it included a request for prior statements of the prosecution's expected trial witnesses. The state responded to Thornton's request on October 21, 1996. This response included police statements from Debra Means and Diane Sullivan; both were dated June 19, 1996.

One month after the state responded to Thornton's discovery request, on November 21, 1996, the state filed with the court copies of signed victim-impact statements that had been completed by Means and Sullivan in connection with requests for information from the Victim Witness Assistance program. About eight months later, on July 30, 1997, the state filed with the court a "Further Victim[-]Impact Statement" by Means. In this statement, dated July 28, 1997, Means reported that she had recently undergone surgery to repair a hernia that developed after Thornton stabbed her. It is undisputed that the state did not formally disclose any of these three victim-impact statements to Thornton.

On October 9, 1997, Thornton filed a second motion for discovery, which more or less mirrored the first request he had filed one year earlier.[9] He also filed a motion for exculpatory evidence on October 23, 1997. The following month, on November 14, 1997, he filed a motion for additional discovery.

A pretrial hearing was held on November 26, 1997. The state objected to Thornton's most recent discovery motions, claiming that it had already responded to the discovery request Thornton had filed in October 1996. The hearing justice stated that he was "satisfied the [s]tate ha[d] complied pursuant to Brady and Rule 16," and he denied Thornton's request for further discovery. The case then proceeded to trial.

Years later, on August 3, 2009, Thornton filed a pro se motion for discovery and inspection of victim-impact statements from 1996 and 1997. During the ensuing postconviction-relief proceedings, the state produced the victim-impact statements on April 8, 2010. Thornton then filed an affidavit, dated April 24, 2010, in which he stated that "this newly discovered evidence [had] never been seen by [him] nor was it ever provided to [him] in discovery before trial."[10]

## A

## Res Judicata

"Section 10-9.1-8, which codifies * * * the doctrine of res judicata within the postconviction-relief context, bars relitigation of the same issues between the same parties after a

---

[9] Thornton was represented by counsel when he filed his original request for discovery in October 1996. He filed a motion to release counsel on November 6, 1996, which the court granted on November 26, 1996. New counsel was appointed thereafter. Thornton attempted to release appointed counsel on March 13, 1997, but the court did not release his counsel until September 5, 1997. Thornton acted pro se in filing his second motion for discovery, with a third attorney appointed to represent him as standby counsel.

[10] This affidavit was filed in support of a motion for a new trial and a motion to compel discovery, which Thornton mailed to the clerk of the court on or about April 29, 2010.

final judgment has entered in a prior proceeding." Anderson, 45 A.3d at 602 (quoting Brown v. State, 32 A.3d 901, 910 (R.I. 2011)). If, in a subsequent application for postconviction relief, an applicant raises issues not set forth in his or her initial application, the applicant is precluded from raising those new issues—absent an "interest of justice" showing—unless he or she "establish[es] a reason why his or her claims could not have been presented initially." Id. (quoting Brown, 32 A.3d at 910 and Ferrell v. Wall, 971 A.2d 615, 621 (R.I. 2009)).

This appeal centers on the state's failure to produce the victim-impact statements of Means and Sullivan to Thornton in response to his requests for discovery. Although those statements were not given to Thornton, they were filed with the clerk of the court and noted on the court docket sheet. Because Thornton was represented by counsel on direct appeal and in connection with his first application for postconviction relief, we conclude that he should have been aware through counsel of the existence of these statements. See Anderson, 45 A.3d at 602 (barring claim of prosecutorial misconduct because grounds were available to applicant through counsel when he filed his initial postconviction-relief application). Even if the claims underlying this postconviction-relief application were not barred by res judicata, they are meritless, as we explain below.

**B**

**Brady**

In the landmark decision of Brady, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. In a later decision, the Supreme Court defined the standard of materiality: "[E]vidence is material only if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). The Bagley court also clarified that "[i]mpeachment evidence * * * falls within the Brady rule." Id. at 676.

We conclude that, even if the state had disclosed the victim-impact statements to him before trial, Thornton has failed to demonstrate that the result of his trial would have been different. See Bagley, 473 U.S. at 682. The hearing justice explained his decision on this issue as follows:

> "[T]he information in the victim[-]impact statements was either immaterial or already provided in discovery. In large part the same information was presented to the jury. Obviously, any information presented to the jury was heard simultaneously by Thornton. [Means's] and [Sullivan's] renditions of their emotional responses to the attack and ensuing standoff and their desire to see Thornton sentenced to life in prison is neither exculpatory nor impeachment evidence. [Means] did provide a very cursory description of her injuries in her victim impact statement. However, the same information was provided to Thornton in the [s]tate's [a]nswer to [his] [m]otion for [d]iscovery and [i]nspection. The [s]tate provided Thornton with the transcript of [Means's] oral statement taken in the hospital and medical reports from [her physicians], all of which provided a detailed description of [her] wounds. Furthermore, [Means's] testimony at trial did not differ from the cursory description she provided in her victim[-]impact statement. Therefore, it is not reasonably probable that had the victim[-]impact statements been directly disclosed (in hand or by mail) to the defense, the result would have been different."

We agree. Thornton offers nothing but pure speculation that the victim-impact statements, if disclosed, would have affected the jury's verdict. This speculation falls far short of "'reasonable probability' * * * sufficient to undermine confidence in the outcome" of his trial. See Bagley, 473 U.S. at 682. Because Thornton cannot satisfy Bagley's standard of materiality, his claim under Brady must fail.

## C

## Rule 16

In addition to <u>Brady</u>'s mandate, prosecutors must also comply with the discovery obligations set forth in our court rules. Rule 16(a) allows a defendant to seek discovery from the prosecution "[u]pon written request." Among other things, defendants may seek production of "all written or recorded verbatim statements" of the prosecution's expected trial witnesses. Rule 16(a)(8). The rule imposes upon the prosecution (and the defendant, if the state seeks reciprocal discovery from him or her) a continuing duty to disclose additional discoverable material, if requested. Rule 16(h). Subsection (i) of Rule 16 allows the court to impose sanctions for noncompliance.

In <u>Stravato</u>, 935 A.2d at 953, the state admitted that the prosecutor had deliberately withheld a victim-impact statement from the defendant based on her good-faith belief that Rule 16 did not require her to produce it. We vacated the judgment of conviction, holding that because "the state's nondisclosure was deliberate, * * * prejudice is presumed and the defendant [was] entitled to a new trial." <u>Id.</u> We also observed that "[t]he [state's] nondisclosure [was] particularly significant in a case such as this in which the prosecution relie[d] primarily on the testimony of the witness whose statement was withheld from [the] defendant." <u>Id.</u> at 955.

Here, by contrast, the state characterized the nondisclosure of the victim-impact statements as "inadvertent" and denied that they were "consciously excluded" from the state's responses to Thornton's requests for discovery. Indeed, if the state had intended to conceal the presence of these statements from Thornton, filing them with the clerk of the court would have been a poor way to do so. We do not presume prejudice unless the nondisclosure was deliberate. See <u>Stravato</u>, 935 A.2d at 951 (citing <u>State v. Vocatura</u>, 922 A.2d 110, 118 (R.I. 2007)). After

reviewing the record, we conclude that Thornton was not prejudiced by the state's failure to disclose the victim-impact statements under Rule 16. Accordingly, Thornton is not entitled to postconviction relief on this basis.

### D

### Newly Discovered Evidence

"When conducting the analysis of an application for postconviction relief based on newly discovered evidence, the hearing justice utilizes the same standard used for considering a motion for a new trial due to newly discovered evidence." Reise v. State, 913 A.2d 1052, 1056 (R.I. 2007) (citing Brennan v. Vose, 764 A.2d 168, 173 (R.I. 2001)). The evidence must be "newly discovered or available only since trial" and must not have been "discoverable prior to trial despite the exercise of due diligence." Id. In an affidavit, Thornton claimed that he had not seen the victim-impact statements until April 2010, when the state provided them to him pursuant to the hearing justice's order. However, as stated above in our analysis of whether Thornton's claims under Rule 16 and Brady are barred by res judicata, Thornton could have discovered the existence of the victim-impact statements through counsel well before he filed his subsequent application for postconviction relief. Accordingly, Thornton is not entitled to postconviction relief based on newly discovered evidence.

### V

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     State v. Christopher S. Thornton.

**CASE NO:**     No. 2012-5-C.A.
(W1/96-595-A)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     June 19, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**     Washington County Superior Court

**JUDGE FROM LOWER COURT:**

Associate Justice Edwin J. Gale

**ATTORNEYS ON APPEAL:**

For State:  Lauren S. Zurier
            Department of Attorney General

For Defendant:  Christopher S. Thornton, Pro Se