June 12, 2020

**Supreme Court**

No. 2019-55-Appeal.
(NM 10-649)

Roger Graham            :

v.                      :

State of Rhode Island.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Roger Graham                    :

v.                    :

State of Rhode Island.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The applicant, Roger Graham (applicant or Graham), appeals from a judgment denying his application for postconviction relief. On May 13, 2020, this case came before the Supreme Court by videoconference pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not be summarily decided. After hearing the parties' arguments and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown and that further briefing or argument is not required to decide this matter. For the reasons stated herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The underlying facts of this case are set forth in *State v. Graham*, 941 A.2d 848 (R.I. 2008), where this Court affirmed applicant's conviction for first-degree murder, discharging a firearm during the commission of a crime of violence, and conspiracy. *Graham*, 941 A.2d at 852-53. We recite only the facts that are pertinent to this appeal. On December 31, 2001, applicant and two friends, Monty France (France) and Hubert "Tall Man" Gordon (Gordon), set

out in a 1992 Ford Taurus in pursuit "of a profitable drug opportunity in Boston." *Id.* at 853. However, the plans were foiled when the vehicle broke down. *Id.* After the car was towed to a local gas station, the men were spotted removing the license plates from the vehicle, and a North Attleboro police officer was dispatched to investigate the suspicious behavior. *Id.* At that point, applicant was stranded after his two friends, France and Gordon, were arrested on outstanding warrants. *Id.* The applicant called his friend, T.J. Patel, who brought applicant to a hotel for the night. *Id.*

The next day, January 1, 2002, Patel picked applicant up at the hotel "and the two drove around for some time, finally ending up in the vicinity of the Founder's Brook Motel in Portsmouth." *Graham*, 941 A.2d at 853-54. That same day, the manager of that motel was murdered. *Id.* at 852. A subsequent investigation led the police to Patel, which disclosed applicant's acquaintance with Patel and applicant's possible involvement in the murder. *Id.* at 855. Ultimately, applicant was arrested and charged with first-degree murder, discharging a firearm during the commission of a crime of violence, and conspiracy. *Id.* After a trial, applicant was convicted of all three charges. *Id.*

The applicant appealed to this Court, contending "that the trial justice erred in his (1) instructions to the jury, (2) rulings on various evidentiary issues, (3) denial of defendant's motion for a judgment of acquittal on the conspiracy charge, (4) life-without-parole proceedings and sentencing of defendant, and (5) not appointing defendant additional counsel for his third trial." *Graham*, 941 A.2d at 855. This Court upheld both the conviction and sentence. *Id.*

On November 22, 2010, applicant filed a *pro se* application for postconviction relief, and counsel was thereafter appointed. In an amended application, applicant argued that (1) newly discovered evidence had come to light that tended to prove that France, a state witness, had

- 2 -

testified falsely at applicant's trial, (2) the trial justice impermissibly amended the indictment that charged him as a principal, by allowing the jury to consider convicting him as an aider and abettor, and (3) a consecutive life sentence for discharging a firearm during the commission of a crime of violence should not have been imposed in addition to his sentence of life without parole for first-degree murder. The state objected to the amended application and filed a motion to dismiss. The state asserted that the testimony of France was not newly discovered, the issue of the amended indictment was barred by *res judicata*, and the trial justice did not err when he sentenced applicant.

On August 6, 2014, a hearing was held before a justice of the Superior Court on the application for postconviction relief.[1] At the hearing, Corey Day was the first witness to testify. Day testified that he is an inmate incarcerated at the Adult Correctional Institutions for robbery and was then serving a twenty-year sentence. He testified that, in January 2005, he had direct contact with France at the ACI "over a period of time[,]" and that he learned that France was being held as a hostile witness in applicant's murder trial. Day further testified that he learned that France and applicant had been friends for ten years and "that they sold cocaine together." He testified that at that time he thought he would be getting released from prison on bail and also thought that France could be a "good coke connection for cocaine distribution[.]"

Day testified that France told him that the prosecutor in applicant's case threatened to charge France with the murder if he did not testify against applicant; but when Day asked France if applicant had actually committed the murder, France did not answer and simply said "I don't know. I don't know." According to Day, he continued to ask France whether applicant had

---

[1] We note that the hearing justice was also the original trial justice.

committed the murder, and France finally "broke down, and he said, look man, I'm just doing what I got to do to get out of this. He didn't do no murder. It was just a drug deal."

Day further testified that, because he needed France as a cocaine connection, he decided to write a letter to the prosecutor in applicant's case to strengthen France's credibility. Day testified that he changed one detail in the letter in order to help France, writing to the prosecutor that France said applicant had in fact committed the murder, "when in fact this was not true." Day testified that he never received a reply from the prosecutor in the case, but that applicant's defense counsel, Robert Mann, called Day's attorney to ask if Day would testify as a defense witness. Day testified that he declined because by then he realized he was not "getting out of prison, so the benefit of helping Monty France was no longer needed."

Day testified that he eventually learned that applicant was convicted for the murder and that it "concerned" him because France was being forced to testify that applicant committed the crime when, in fact, France had told Day otherwise. Day testified that, on November 25, 2008, due to this concern, he wrote a letter to Attorney Mann to offer the information he had with regard to France's testimony.

Next, Attorney Mann testified on behalf of applicant. He testified that he received a copy of the 2005 letter that Day had sent to the prosecutor in applicant's case. Attorney Mann testified that he communicated the contents of the letter to applicant and contacted Day's attorney to request permission to speak with Day. In response, Day's attorney told Attorney Mann that he did not want Attorney Mann to contact Day. Attorney Mann testified that, as a result of that communication, he did not attempt to make any further contact with Day.

Attorney Mann further testified that, in November 2008, he received a letter from Day, which indicated that Day was "taking a totally different point of view and that this would

potentially be very helpful to Mr. Graham." Attorney Mann testified that he helped applicant prepare an application for postconviction relief, based in part on Day's letter, and, within the application, he requested that counsel be appointed for applicant, so as to not foreclose applicant from raising issues in the postconviction-relief application that might involve Attorney Mann. Attorney Mann testified that, once the application was filed, he had no further involvement with the case.

On January 30, 2015, the hearing justice rendered a bench decision. He noted that applicant had raised three arguments in support of his application for postconviction relief, and he addressed each issue in turn. With regard to applicant's claim that Day's 2008 letter to Attorney Mann constituted newly discovered evidence, the hearing justice noted that "a petitioner bears a heavy burden when seeking a new trial on the basis of newly discovered evidence[.]" The hearing justice found that the evidence was "merely impeaching" and would only be used "to the effect that Roger Graham told [France] that he was coming to this area to do a drug deal, not to rough someone up or murder someone." He further found that Day "had no personal knowledge of the crime itself" and that whatever knowledge Day did have resulted from his alleged conversations with France and from reading newspaper articles.

The hearing justice also commented on Day's credibility, finding that his "testimony [was] not worthy of belief" because "[h]e either lied in the first letter or he lied in the second letter. So he's an admitted liar, and his testimony on the stand * * * [wa]s not worthy of belief." Ultimately, the hearing justice determined that Day's 2008 letter warranted no weight and was "certainly not the type of evidence that would change the verdict in this case, nor d[id] it rise to the level necessary to warrant relief based upon newly discovered evidence."

Regarding whether he impermissibly amended the indictment, which charged applicant as a principal, by allowing the jury to convict him as an aider and abettor, the hearing justice stated that this issue was raised before this Court on direct appeal when applicant challenged the adequacy of the jury instruction. *See Graham*, 941 A.2d at 858.  The hearing justice further noted that this Court held in *Graham* that the aiding-and-abetting instruction was appropriate in light of the substantial amount of evidence presented at trial that may have served as a foundation for a finding that applicant had assisted Patel in the murder of the motel manager. *See id.*  The hearing justice found that applicant's contention was a "distinction without a difference, that could have also been raised on appeal and argued on appeal, and therefore was waived."

Finally, the hearing justice addressed whether he had erred in imposing a consecutive life sentence for the conviction of discharging a firearm during the commission of a crime of violence, in addition to applicant's sentence of life without parole for first-degree murder.  The hearing justice stated that this Court had upheld the firearm statute, G.L. 1956 § 11-47-3.2, on various grounds, and that the imposition of the consecutive sentence was not only permissible but mandatory under § 11-47-3.2.  Additionally, the hearing justice stated that such an issue "could have been raised on appeal and was not."  With that, the hearing justice denied the application for postconviction relief.  The applicant timely appealed to this Court.[2]

---

[2] We pause to note that applicant's challenge to the denial of postconviction relief comes to us on appeal, not certiorari, because he filed his notice of appeal prior to the 2015 amendment to G.L. 1956 § 10-9.1-9, which requires an applicant to file a petition for a writ of certiorari to seek review of a final judgment regarding postconviction relief. *See State v. Gibson*, 182 A.3d 540, 543 n.1 (R.I. 2018).

**II**

**Standard of Review**

"Rhode Island's statutory postconviction remedy is set forth in [G.L. 1956] chapter 9.1 of title 10." *State v. Thornton*, 68 A.3d 533, 539 (R.I. 2013). "Section 10-9.1-1 enumerates the circumstances in which 'one who has been convicted of a crime may seek collateral review of that conviction.'" *Id.* (deletion omitted) (quoting *Anderson v. State*, 45 A.3d 594, 601 (R.I. 2012)). "An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted." *Id.* at 540 (quoting *Anderson*, 45 A.3d at 601).

"When we review an application for postconviction relief, 'this Court will not impinge upon the fact-finding function of a hearing justice absent clear error or a showing that the hearing justice overlooked or misconceived material evidence in arriving at those findings.'" *Chum v. State*, 160 A.3d 295, 298 (R.I. 2017) (brackets and deletion omitted) (quoting *Tempest v. State*, 141 A.3d 677, 682 (R.I. 2016)). "We review *de novo* 'questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Id.* at 298-99 (deletion omitted) (quoting *Tempest*, 141 A.3d at 682). "Even when employing a *de novo* review, 'we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference.'" *Id.* at 299 (deletion omitted) (quoting *Tempest*, 141 A.3d at 682).

**III**

**Discussion**

Before this Court, applicant asserts that the hearing justice erred when he determined that the testimony of Day was not newly discovered evidence, the indictment which charged

applicant as a principal was not impermissibly amended by allowing the jury to convict him as an aider and abettor, and a sentence of imprisonment for discharging a firearm during the commission of a crime of violence could be imposed consecutive to a sentence of life without parole for first-degree murder. We address each of these contentions below.

## A

### Newly Discovered Evidence

The applicant first contends that the hearing justice erred when he determined that Day's 2008 letter did not meet the test for newly discovered evidence because it was "merely impeaching." According to applicant, the trial testimony of France, claiming that applicant went to Boston to commit an act of violence, was the only direct evidence of a conspiracy between applicant and Patel, his codefendant, to commit such act. Also, applicant claims that Day's 2008 letter "is more compelling than that," because France's testimony at trial contradicted that of applicant's when applicant testified at trial that "he traveled to Boston to complete a drug deal and not to commit murder."

"When conducting the analysis of an application for postconviction relief based on newly discovered evidence, the hearing justice utilizes the same standard used for considering a motion for a new trial due to newly discovered evidence." *Reise v. State*, 913 A.2d 1052, 1056 (R.I. 2007). "That standard consists of two parts." *Id.* "The first part of this analysis requires that a postconviction-relief applicant 'establish that (a) the evidence is newly discovered or available only since trial; (b) the evidence was not discoverable prior to trial despite the exercise of due diligence; (c) the evidence is not merely cumulative or impeaching but rather is material to the issue upon which it is admissible; and (d) the evidence is of a kind which would probably change the verdict at trial.'" *Rice v. State*, 38 A.3d 9, 15 n.8 (R.I. 2012) (quoting *Reise*, 913 A.2d at

1056). "Should an applicant meet this preliminary threshold, 'the hearing justice must then determine, in his or her discretion, whether or not the newly discovered evidence is sufficiently credible to warrant relief.'" *Id.* (quoting *Reise*, 913 A.2d at 1056).

It is clear to us that the hearing justice correctly determined that applicant did not carry his burden and meet the standard for newly discovered evidence. On appeal, as in the trial court, the state concedes that applicant meets the first two prongs of the test for newly discovered evidence. Indeed, Day's revelation was not discoverable until he wrote the letter to Attorney Mann in November 2008, well after trial. For similar reasons, the evidence was not discoverable prior to trial despite the exercise of due diligence from trial counsel. However, we agree with the hearing justice that Day's 2008 letter is merely impeaching, and in no way material to applicant's underlying convictions.

This Court has held that "[i]mpeaching evidence * * * is 'information that is not related to the defendant's guilt or innocence and serves only to destroy the credibility of the witness.'" *D'Alessio v. State*, 101 A.3d 1270, 1276 (R.I. 2014) (brackets omitted) (quoting *Bleau v. Wall*, 808 A.2d 637, 644 (R.I. 2002)). Contrarily, "material evidence is that which creates a 'reasonable probability of a different result.'" *Id.* (quoting *Bleau*, 808 A.2d at 643).

Day's 2008 letter is not the type of evidence that creates a reasonable probability of a different result. Neither Day nor France had firsthand knowledge of the murder, and the little knowledge that Day did have about applicant's case came from his alleged conversations with France and from reading newspaper articles. Day's 2008 letter, which stated that applicant's purpose for driving to Boston was for a drug deal, would merely contradict France's testimony at trial that applicant's original purpose for driving to Boston was for a "robbery or some other act of violence, and did not relate to drugs." *Graham*, 941 A.2d at 853. Such evidence is clearly

collateral to the essential question of whether applicant committed the murder and, if admissible, would only serve to impeach France's credibility.

Additionally, the hearing justice commented on Day's credibility and found that Day "clearly ha[d] an axe to grind"; was "an admitted liar" whose testimony "is not worthy of belief"; and accorded Day's testimony "no weight whatsoever[.]" This determination was clearly the hearing justice's to make. *See State v. Marizan*, 185 A.3d 510, 518 (R.I. 2018) ("[T]he trial justice is in a much better position to make factual findings and credibility determinations than we are[.]"). We therefore hold that the hearing justice was neither clearly wrong nor did he overlook or misconceive the evidence in finding that Day's 2008 letter did not meet the test for newly discovered evidence.

**B**

***Res Judicata***

Next, applicant avers that the trial justice impermissibly amended the criminal indictment by instructing the jury on aiding and abetting, despite applicant being "charged as the principal offender, indicted as a principal, [and] presented evidence against as a principal[.]" The applicant also asserts that the trial justice erred in imposing his sentence by sentencing him to life without parole for first-degree murder followed by a consecutive life sentence under § 11-47-3.2.

"The doctrine of *res judicata* as applied to applications for postconviction relief is codified in § 10-9.1-8." *Ricci v. State*, 196 A.3d 292, 298 (R.I. 2018) (quoting *Hall v. State*, 60 A.3d 928, 931 (R.I. 2013)). Section 10-9.1-8 provides, in pertinent part, that:

> "Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of

- 10 -

> justice the applicant should be permitted to assert such a ground for relief."

"Thus, the doctrine of *res judicata* 'bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them.'" *Ricci*, 196 A.3d at 299 (quoting *Hall*, 60 A.3d at 932).

Clearly, the same parties involved in applicant's direct appeal are involved in this case, applicant and the state, and applicant's direct appeal resulted in a final judgment. *See Graham*, 941 A.2d at 848, 867. More importantly, applicant could have raised his contentions that the trial justice impermissibly amended the indictment and erred in implementing his sentence on direct appeal. Indeed, he raised strikingly similar issues on direct appeal, challenging the trial justice's aiding-and-abetting instructions to the jury and the imposition of the sentence of life without the possibility of parole, both of which were affirmed by this Court. *See id.* at 866-67. As such, we conclude that applicant's contentions that the trial justice impermissibly amended the indictment and erred in implementing his sentence are barred by *res judicata*. *See Ricci*, 196 A.3d at 299.

Although we conclude that these issues are both barred by *res judicata*, it is our opinion that they are also without merit.

**1**

**Amended Indictment**

The applicant contends that this Court should use this opportunity to define the "interest of justice" exception, found in § 10-9.1-8, to overcome the *res judicata* bar and hold that the trial justice impermissibly amended the criminal indictment by instructing the jury on aiding and abetting, and allowing the jury to consider convicting him as an aider and abettor. We disagree.

We have continuously held "that one who aids and abets in the commission of the crime and is also present at the scene may be charged and convicted as a principal." *State v. Davis*, 877 A.2d 642, 648 (R.I. 2005) (quoting *State v. McMaugh*, 512 A.2d 824, 831 (R.I. 1986)). Our view is based on our reading of G.L. 1956 § 11-1-3, "which 'eliminates the legal distinction between * * * the commission of a crime as a principal and * * * aiding and abetting another in the commission of a crime.'" *State v. Delestre*, 35 A.3d 886, 899 (R.I. 2012) (quoting *Davis*, 877 A.2d at 648). Based on our jurisprudence, a "defendant's manner of participation, whether as a principal or an aider or abettor, is not an element of the crime[,]" and is therefore "not an element of the crimes charged in the indictment[.]" *Davis*, 877 A.2d at 648.

As such, the trial justice did not, and could not, impermissibly amend applicant's criminal indictment by instructing the jury on aiding and abetting. In any event, we discern no prejudice to applicant because, as we have previously held, applicant was indeed convicted as a principal. *See Graham*, 941 A.2d at 857, 858.

**2**

**Consecutive Life Sentences**

The applicant avers that the trial justice erred by sentencing him to a life sentence, pursuant to § 11-47-3.2, consecutive to a sentence of life without parole, because § 11-47-3.2(a) provides that "a person sentenced to life under this section may be granted parole." The applicant also contends that G.L. 1956 § 12-19-5, authorizing consecutive sentences, creates a "legal impossibility" because the consecutive life sentence under § 11-47-3.2 will never commence, because applicant has no possibility to get out on parole on the life-without-parole sentence for the first-degree murder conviction. Such an argument is without merit.

It is well established "that the proper procedure for reviewing a sentence imposed in the Superior Court [is] by a motion to reduce [the] sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure." *State v. Price*, 820 A.2d 956, 973 (R.I. 2003). Our review of the record reveals that applicant has not filed such a motion.

Additionally, we have held that § 11-47-3.2(c) provides a mandatory direction that sentences imposed under § 11-47-3.2 "shall run consecutively, and not concurrently, to any other sentence imposed[.]" *See State v. Monteiro*, 924 A.2d 784, 794, 795 (R.I. 2007) (recognizing that consecutive life sentences imposed under § 11-47-3.2 were mandatory). Therefore, the trial justice was obligated to sentence the applicant to a life sentence, pursuant to § 11-47-3.2, that ran consecutively, and not concurrently, to his sentence of life without parole for first-degree murder.

**IV**

**Conclusion**

Accordingly, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Roger Graham v. State of Rhode Island. |
| **Case Number** | No. 2019-55-Appeal.<br>(NM 10-649) |
| **Date Opinion Filed** | June 12, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Stephen P. Nugent |
| **Attorney(s) on Appeal** | For Applicant:<br><br>Jodi M. Gladstone, Esq. |
| | For State of Rhode Island:<br><br>Virginia M. McGinn<br>Department of Attorney General |